**Bernard BERGMAN et al., Plaintiffs,**

v.

**SENATE SPECIAL COMMITTEE ON AGING et al., Defendants.**

**No. 75 Civ. 543.**

United States District Court,
S. D. New York.

Feb. 6, 1975.

Thal & Youtt, New York City, for plaintiffs; Steven H. Thal, Harry E. Youtt, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. New York, for defendants Senate Special Committee on Aging, Subcommittee on Long-Term Care and The Honorable Frank E. Moss, individually and as Chairman of the Subcommittee on Long-Term Care, Senate Special Committee on Aging, and Patricia G. Oriol, individually and as Chief Clerk, Subcommittee on Long-Term Care, Senate Special Committee on Aging; Taggart D. Adams, Mel P. Barkan, John S. Siffert, Asst. U. S. Attys., of counsel.

## OPINION

GAGLIARDI, District Judge.

Plaintiffs bring this action to declare invalid, and to enjoin compliance with, a subpoena issued by the Special Committee on Aging of the United States Senate ("Special Committee"). The subpoena was served upon the American Bank & Trust Co. ("American Bank") and was signed by The Honorable Frank E. Moss as Chairman of the Subcommittee on Long-Term Care ("Subcommittee") of the Special Committee. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1346(a)(2). Plaintiffs have moved pursuant to Rule 65(b), Fed.R.Civ.P., for a temporary restraining order enjoining American Bank from complying with the subpoena.

The Special Committee was created by S.Res. 33, 87th Cong., 1st Sess. (1961) and has been continued in existence by subsequent resolutions passed by each Congress. It was made a "permanent special committee" by S.Res. 267, 93rd

Cong., 2d Sess. (1974), which contains the following mandate:

> The committee shall make a full and complete study and investigation of any and all matters pertaining to problems and opportunities of older people, including, but not limited to, problems and opportunities of maintaining health, of assuring adequate income, of finding employment, of engaging in productive and rewarding activity, of securing proper housing, and, when necessary, of obtaining care and assistance.

On May 22, 1963, the Subcommittee on Rules of the Special Committee recommended to the full committee that two subcommittees be established. *Barkan Affidavit*, Exhibit E. The first, a Subcommittee on Housing and the Residential Environment of the Elderly ("Subcommittee on Housing"), was empowered, *inter alia*, to

> inquire into and report on matters including but not limited to . . . the relationship between housing for the elderly and the provision of nursing homes and other health facilities of importance to the elderly; methods of developing more effective cooperation between Federal, State and local governmental units, voluntary organizations and private industry with respect to the development of optimum residential environments for the elderly. . . .

The second, a Subcommittee on Health of the Elderly ("Subcommittee on Health"), was empowered, *inter alia*, to

> inquire into and report on any and all matters relating to the physical and mental health of our older people including but not limited to such subjects as the availability and utilization of health facilities and services; the availability, quality of care and financing of nursing homes and other facilities primarily devoted to the care of the elderly; the costs and methods of financing health services for the elderly and their impact on the elderly and their families; the adequacy and

efficacy of existing programs for financing the provision of health services for the elderly including . . . Federal and other governmental programs; proposals designed to replace, modify or expand on existing methods of providing and financing health facilities, personnel and services for the elderly. . . .

On June 12, 1963, the recommendations of the Subcommittee on Rules relating to the establishment of the two subcommittees were accepted by the Special Committee. It appears that the two subcommittees were consolidated into a joint subcommittee on Long-Term Care in September of 1963. On February 23, 1965, the Special Committee established the Long-Term Care Subcommittee as a full and permanent subcommittee with jurisdiction the same as originally delegated to the Subcommittees on Health and Housing. *Barkan Affidavit*, Exhibit H. That jurisdiction continues to date.

The subpoena in question was issued in connection with a Subcommittee hearing held in New York City on February 4, 1975. It was served upon American Bank on February 3 and called for the production of the following records on February 4:

> Any personal or corporate loan agreements or secured instruments between your Bank and Dr. Bernard Bergman, Anne Weiss Bergman, Amram Kass, and Miriam Kass along with all personal or corporate balance sheets, financial statements or statements of net worth supplied to your Bank by these persons from 1969 through the present.

An earlier subpoena, calling for essentially the same records and served upon American Bank on January 21, has been withdrawn by the Subcommittee.

Plaintiffs contend that the request for these documents by the Subcommittee amounts to unauthorized action without valid legislative justification, in violation of certain of their constitutional rights. On February 4, when the sub-

poenaed documents were to be produced, plaintiffs submitted to the Subcommittee an application to intervene and to withdraw the subpoenas. The application was denied by Senator Moss after conferring with Senators Percy and Domenici. However, compliance with the subpoenas was delayed for 24 hours to allow plaintiffs time to seek court relief. Senator Moss has agreed to a further delay until the evening of February 6 to give this court time to consider and rule upon plaintiffs' motion.

■ The plaintiffs have standing to challenge the legality of the subpoenas on the ground that the forced disclosure of the materials requested would allegedly violate their federal constitutional rights under the First, Fourth, and Ninth Amendments. United States Servicemen's Fund v. Eastland, 159 U.S.App.D.C. 352, 488 F.2d 1252, 1261 (1973), cert. granted 419 U.S. 823, 95 S.Ct. 288, 42 L.Ed.2d 46 (1974); *see* United States v. Miller, 500 F.2d 751 (5th Cir. 1974). No other alternative means of challenging the subpoenas is available to the plaintiffs. They cannot force American Bank to refuse compliance and risk a contempt citation, and their application to the Subcommittee to intervene and seek withdrawal of the subpoenas has been denied.

■■ Plaintiffs concede that if the Subcommittee has a specific need for the subpoenaed materials in order to carry out its lawful function, there would be no violation of their constitutional rights. However, where the inquiry or the request for documents is not "justified by a specific legislative need," the threat of a violation of an individual's constitutional rights, including his or her "personal interest in privacy," outweighs any right the Subcommittee might claim to the subpoenaed documents and requires that disclosure not be compelled. Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). Materials subpoenaed by a Congressional committee in connection with an investigation must be produced in cases where (1) Congress

has the power to investigate; (2) the committee or subcommittee has a proper grant of authority to conduct the investigation; and (3) the materials sought are pertinent to the investigation and within the scope of the grant of authority. *Cf.* United States v. Seeger, 303 F.2d 478 (2d Cir. 1962).

From the documents submitted, it is clear that the Subcommittee has both the power and proper authority to conduct its investigation. It is further clear that the Subcommittee has subpoena power in connection with the investigation. However, as noted above, this subpoena power is not without limits. The wording of the subpoena in question is extremely broad. It calls for *"any* personal or corporate loan agreements or secured instruments" and *"all* personal or corporate balance sheets, financial statements of net worth." (Emphasis added). As worded, the subpoena is overbroad.

■ Plaintiffs allege in paragraph 12 of the complaint that they "are and have been for many years engaged in the business, *inter alia*, of constructing, financing and/or operating nursing home facilities in the State of New York and elsewhere." Insofar as the Subcommittee subpoena seeks documents relating to plaintiffs' corporate or nursing home activities and dealings, it is valid and must be enforced. However, insofar as the subpoena calls for documents beyond this, it goes beyond the Subcommittee's power to investigate the matters in issue and beyond the scope of its authority to conduct its investigation. As drawn, the subpoena calls for "any" and "all" financial records from 1969 to date. This might include records relating to plaintiffs' purely personal financial affairs. While the Subcommittee may properly investigate plaintiffs' profits derived from their nursing home activities, a general inquiry designed to ascertain plaintiffs' personal wealth or general net worth is not pertinent to the investigation and plaintiffs are constitutionally protected from disclosure of this type of information.

■ Plaintiffs' contention that it was not within the power of the Subcommittee to rule upon their application to intervene and withdraw the subpoena is without merit. Rule 3 of the Rules of the Special Committee on Aging, which is applicable to the subcommittee by Rule 4 of the same rules, provides that "one member shall constitute a quorum for the receipt of evidence, the swearing of witnesses, and the taking of testimony at hearings." Present at the February 4 hearing were three members of the Subcommittee; a quorum was thus constituted under Rule 3. *See* United States v. Moran, 194 F.2d 623 (2d Cir. 1962). Rule 4(c) authorizes each subcommittee "to require by subpoena or otherwise . . . the production of documentary evidence." Accordingly, the Subcommittee's denial of plaintiffs' application was within the scope of its authority. *See* Flaxer v. United States, 235 F.2d 821, 98 U.S.App.D.C. 324 (1956), remanded on other grounds, 354 U.S. 929, 77 S.Ct. 1392, 1 L.Ed.2d 1533 (1957).

■ For the reasons stated, American Bank is enjoined from complying with the subpoena in question to the extent that it encompasses documents totally unrelated to plaintiffs' nursing home activities. To the extent that there may be records reflecting both purely personal financial matters and nursing home related matters, these documents must be produced—the justified needs of the Subcommittee in any instances of this type outweigh any private rights which plaintiffs might claim are being violated.

"[T]he two fold requirement for a preliminary injunction is a demonstration of probability of success on the merits and a showing that irreparable harm will result if such relief is denied." Gulf & Western Industries v. Great A. & P. Tea Co., Inc., 476 F.2d 687, 692 (2d Cir. 1973). The court concludes that the plaintiff has met this burden only to the extent of the relief herein granted.

The foregoing constitutes the findings of fact and conclusions of law in accordance with Rule 52(a), Fed.R.Civ.P.

Plaintiffs' motion for a preliminary injunction is granted in part and denied in part in accordance with this decision.

It is so ordered.

## ON MOTION FOR MODIFICATION

On February 6, 1975, this court read into the record of this case an opinion and order on plaintiffs' motion for a preliminary injunction providing, in part, as follows:

. . . American Bank is enjoined from complying with the subpoena in question to the extent that it encompasses documents totally unrelated to plaintiffs' nursing home activities. To the extent that there may be records reflecting both purely personal financial matters and nursing home related matters, these documents must be produced—the justified needs of the Subcommittee in any instances of this type outweigh any private rights which plaintiffs might claim are being violated.

■ Of the documents which American Bank has determined are producible under this order, plaintiffs take issue with the production of three of them. The three documents in question have been produced for an *in camera* inspection. These documents are as follows: (1) "Dr. and Mrs. Bernard Bergman, Statement of Assets and Liabilities as at February 28, 1974;" (2) "Dr. and Mrs. Bernard Bergman, Statement of Assets and Liabilities as at February 28, 1973;" (3) a cash flow report of Dr. and Mrs. Bergman's income producing properties for the year ended February 28, 1974. Attached to each of these documents is a letter, addressed to the Bergmans, signed by Samuel Dachowitz, C.P.A. The court has examined these documents and concludes that they are "records reflecting both purely personal financial matters and nursing home related matters." As such, these docu-

ments must be produced pursuant to the court's order of February 6.

In the alternative, plaintiffs move to modify the February 6 order to require the redaction of these documents prior to their production pursuant to the Subcommittee subpoena. As stated in the order of February 6, "the justified needs of the Subcommittee in any instances of this type outweigh any private rights which plaintiffs might claim are being violated." The bulk of the entries contained in the financial statements in question clearly relate to nursing homes. To delete the few entries which appear not to relate to nursing homes would render these very pertinent documents incomplete. Moreover, while these entries appear to reflect personal financial matters, plaintiffs have made no showing that they are in fact not nursing home related. For these reasons, plaintiffs' application to modify the February 6 order is denied.

So ordered.