GENERAL MOTORS CORPORATION,
Plaintiff,

v.

DIRECTOR OF THE NATIONAL INSTITUTE OF OCCUPATIONAL SAFETY AND HEALTH, (NIOSH), Defendant.

Civ. No. C–3–77–339.

United States District Court,
S. D. Ohio, W. D.

Oct. 11, 1978.

Joseph P. Buchanan, Dayton, Ohio, for plaintiff.

Susan D'Lott, Asst. U. S. Atty., Dayton, Ohio, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court following trial and the presentation of evidence and testimony. Plaintiff General Motors Corporation seeks a declaratory judgment relieving it from complying with a subpoena duces tecum issued by defendant directing such plaintiff to make disclosure of medical records of its employees. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

## I

### FINDINGS OF FACT

1. Pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, the National Institute for Occupational Safety and Health (NIOSH) is authorized to investigate working conditions of American laborers. Upon specific request, it may conduct a health hazard evaluation (HHE)

of specific working conditions in a specific plant.

2. Plaintiff General Motors Corporation prior to 1977 maintained in Dayton, Ohio, a facility known as "The Hill Plant", South Upland Avenue, Dayton, Ohio. Among the industrial processes performed at such plant was one identified as "the wet rubber process".

On November 1, 1976, NIOSH received a written request to conduct a health hazard evaluation at the Hill Plant in regard to the wet rubber process. Such request was made pursuant to 29 U.S.C. § 669(a)(6) which provides in pertinent part as follows:

> [the Secretary of Health, Education, and Welfare] shall determine following a written request by any . . . authorized representative of employees . . whether any substance normally found in the place of employment has potentially toxic effects in such concentrations as used or found . . .

There is no dispute that NIOSH had appropriate authority to conduct the HHE regarding the wet rubber process. Notice was given on January 26, 1977, of an intent to conduct such HHE (Joint Exhibit II).

3. The Inland Division of General Motors maintains medical records of its employees. It employs a full time Director of Health and Safety and maintains first aid dispensaries at its various plants, including the Hill Plant. The plaintiff, through its Department of Health and Safety, conducts three types of examinations: A pre-employment physical; annual precautionary examinations of some employees; and those examinations required by the Occupational Safety and Health Act of 1970. Records of all contact between employees and the medical facilities are maintained in the form of records of examination and records of treatments. Such records (Plaintiff's Exhibits 17, 18 & 19) contain confidential information. Under the section, "Medical History", are questions such as: "Have you had or consulted a physician for any of the following: . . . venereal disease . . emotional disorder, nervous breakdown . . . .." There are also the following questions for which answers are requested: "Do you drink alcoholic beverages? How much? How frequent? Have you ever had a health problem caused by drinking? Do you, or have you taken 'street drugs? Heroin, cocaine, LSD, uppers or downers'?"

In addition to the foregoing, the information requested is extensive and would qualify by any standard as confidential medical information subject to doctor/patient privilege.

4. During 1977 employees of NIOSH visited the Hill Plant and requested an opportunity to examine and copy employee medical records. Dr. Merrill Gibson, Director of Health and Safety, Inland Division, agreed to make such records available with consent of the employees involved. On October 17, 1977, a letter was sent to employees with an attached release authorizing the plaintiff to turn over to such employee's personal physician any and all information contained in the employee's medical records (Plaintiff's Exhibits 9 and 10). Not all employees contacted executed the release. In most instances where the employee directed either that his medical records be transmitted to his personal physician or directly to NIOSH, such action was taken. Requests were sent to some 704 present or former employees. 148 gave consent; 490 refused; 66 were not located.

5. In October of 1977 representatives of NIOSH began an on-site health hazard evaluation and interviewed certain of the employees. Approximately 120 employees were physically examined and an additional 40 answered questionnaires.

6. NIOSH maintains Health Hazard Evaluation records in locked cabinets and under reasonably secure conditions. Information obtained is handled by a variety of technicians and clerks and may become a part of computerized records which theoretically could be examined by anyone with access to such computer. Computerized records are not maintained on a name basis but rather upon a plant evaluation basis and information regarding a specific employee would be difficult, if not impossible, to retrieve. No evidence was presented of any breach of security.

Conflicting evidence was presented as to information obtained from such records by contract physicians who would conduct the study. At the very least, such physicians would be permitted to retain copies of notes and findings for a prolonged period of time and such information could be retained beyond the control of NIOSH on a permanent basis.

## II

## OPINION

A disposition of this matter requires a consideration of three issues:

A. Has NIOSH the statutory power to issue the subpoena duces tecum in question;

B. Does such subpoena duces tecum abuse the subpoena power;

C. Would compliance abridge the patient/physician relationship.

## A. STATUTORY AUTHORITY

NIOSH contends that 29 U.S.C. § 671(c)(2) gives it subpoena power because that section incorporates by reference powers given to the Secretary of Health, Education and Welfare under 29 U.S.C. § 669,[1] which include the subpoena power conferred upon the Secretary of Labor by 29 U.S.C. § 657(b)[2]. General Motors concedes that NIOSH is empowered to do everything which the Secretary of Health, Education and Welfare may do under Section 669.[3] However, it denies those powers include subpoena power.

■ A subpoena duces tecum is not intended solely for enforcement purposes. It also may serve to provide statistical data which are needed for government reports, rule-making and legislating. See *Bergman*

*v. Senate Special Comm. on Aging*, 389 F.Supp. 1127 (S.D.N.Y.1975). The subpoena in question was issued within the statutory authority of NIOSH.

## B. ABUSE OF SUBPOENA POWER

At issue herein is only the question of a subpoena issued to General Motors. There is no question that NIOSH has the right to interrogate employees and while the question is not free from doubt, it is arguable that NIOSH could compel answers from employees themselves regarding their own health background. That issue, however, is not before the Court.

*Bergman* discusses an appropriate test for release of materials. The third prong of such test requires that "the materials sought [be] pertinent to the investigation", *supra* at 1130.

*Bergman* must be read in conjunction with *Watkins v. United States*, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957) which held: "There is no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress.", *supra* at 187, 77 S.Ct. at 1179.

The distinction, narrow though it may be, between substantive information for statistical purposes and identification of specific employees assumes a critical importance in terms of pertinence of this stage of the proceedings. If NIOSH is seeking only to accumulate statistical data regarding health conditions present in a group of employees who performed a certain process and not in others, it is clear that such information is pertinent, significant, and within its mandate of inquiry. Such information does not require the disclosure of identifying names or addresses. The Court is aware of no

---

1. "The Institute [NIOSH] is authorized to . . (2) perform all functions of the Secretary of Health, Education, and Welfare under sections 669 . . . of this title." 29 U.S.C. § 671(c)(2).

2. "In making his . . . investigations under this chapter the Secretary may require . . the production of evidence under oath. . . ." 29 U.S.C. § 657(b).

3. "The Secretary of Health, Education, and Welfare, . . . may prescribe regulations requiring employers . . . [to] make reports on the exposure of employees to substances or physical agents which the Secretary of Health, Education, and Welfare reasonably believes may endanger the health or safety of employees." 29 U.S.C. § 669(a)(5).

authority, and none has been cited, that statistical totals may not be made public or that an individual if unidentified has a right to be excluded from a scientific paper.[4]

■ While there is a limited exception to the foregoing under Ohio law, it does not seem to bear upon this question. Generally, an Ohio physician may not disclose a patient's medical records without the patient's consent, Ohio Rev.Code §§ 2317.02 and 4731.22; *Hammonds v. Aetna Casualty & Surety Co.*, 237 F.Supp. 96 (N.D.Ohio 1965). The purpose of this rule ". . . is to encourage patients to make a full disclosure of their symptoms and condition to their physicians without fear that such matters will later become public." *State v. Antill*, 176 Ohio St. 61, 197 N.E.2d 548, 551 (1964).

The limited exception may be found in Ohio Revised Code Section 3701.05. Whenever a physician diagnoses an occupational disease, he is required by this section to report to the Ohio Department of Health the

(a) Name, address, and occupation of [his] patient;
(b) [the] Name, address, and business of [the patient's] employer;
(c) [the] Nature of [the] disease; [and]
(d) Such other information as may be reasonably required by the department.

In such instances, the reporting physician has been held to enjoy an exemption from the nondisclosure rule. See *Antill, supra.*

We deal herein neither with an occupational "disease", nor with a Department of the State of Ohio. *Expressio unius est exclusio alterius.*

In the absence of some compelling need to identify individuals at this time by NIOSH, it would seem that individual rights of a person should not be taken from him without his knowledge and without an opportunity to be heard.

Insofar as plaintiff seeks a declaratory judgment relieving it of the duty to provide medical records to the defendant, such request will be denied. Insofar as the prayer for such judgment would relieve plaintiff from supplying names and addresses to the records supplied, that prayer will be granted.

While the question need not be decided at this time, it would seem to this Court that should NIOSH subsequently require the names and addresses of specific employees for purposes of examination or questioning, the names and addresses themselves without reference to the specific records could be properly supplied to NIOSH and the matter thereupon resolved between NIOSH and the employees involved.

The right of subpoena and a compulsion to answer could thus be tested in an appropriate case and at an appropriate time with appropriate litigants given an opportunity to be heard.

In view of the foregoing, this Court makes the limited holding that plaintiff must supply medical records, but need not supply identifying names and addresses.

### III

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2).

■ B. Defendant NIOSH is authorized to make inspections and to question employers and employees in order to carry out its functions and responsibilities. Pursuant thereto, an employer may be required to submit to NIOSH medical information regarding its employees without identification thereof.

■ C. An employer is not required to submit to NIOSH medical records identified by name and address without specific consent of the employee involved.

---

4. In this connection the Court notes the testimony of defendant witness Dr. Stewart Brooks, who testified that at this stage of the investigation there was no need for the names of plaintiff's employees.

D. An employee is entitled to be heard in a due process hearing to determine whether or not identified records pertaining to him may be examined without his consent.

E. In view of the foregoing, judgment does hereby issue declaring that plaintiff shall make available to defendant medical records of its employees, but need not identify such records as to name or address of the employee involved.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.