## SOUTHERN INDIANA GAS AND ELECTRIC COMPANY,

v.

DIRECTOR, NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES.

No. EV 81–103–C.

United States District Court, S. D. Indiana, Evansville Division.

July 7, 1981.

Bamberger, Foreman Oswald & Hahn, Fred P. Bamberger, Robert T. Bodkin, Evansville, Ind., for plaintiff.

Virginia Dill McCarty, U. S. Atty., Harold Bickham, Asst. U. S. Atty., Indianapolis, Ind., for defendant.

BROOKS, District Judge.

## ORDER

This matter comes before the Court on plaintiff's Motion for Injunctive Relief. Fed.R.Civ.P. 65(a). Adequate notice was given to all parties, with both the petitioner and the government represented by counsel. The Court having heard and considered evidence on the merits at a hearing held on June 30, 1981, finds the following:

## FINDINGS OF FACT

1. Plaintiff, Southern Indiana Gas and Electric Company (SIGECO), is an Indiana Corporation with its principal place of business in Evansville, Indiana, and is a public utility.

2. Plaintiff owns and/or operates electric generating stations, two of which are located in Warrick County, Indiana and known as the Warrick Generating Station and the Culley Generating Station.

3. Defendant is the Director of the National Institute for Occupational Safety and Health (NIOSH), an agency of the United States created as part of the United States Department of Health and Human Services by 29 U.S.C. § 671.

4. On or about December 19, 1980, defendant received a request for a health hazard evaluation filed by David McNeely, Business Agent for Local 702, International Brotherhood of Electrical Workers, the authorized representative of plaintiffs employees, regarding the Culley Generating Station.

5. The requested evaluation is to cover operators and maintenance employees at that power plant and requested the evaluation of those employees in relation to alleged exposure to "boiler gas" and "coal dust."

6. The requested evaluation was for lung function studies in addition to other tests.

7. The requester identified forty-two (42) of plaintiffs employees alleged to be exposed to boiler gas and coal dust and estimated exposure up to seven (7) hours per day.

8. On or about April 10, 1981, defendant received another request for health hazard evaluation from McNeely in his official capacity requesting an evaluation of alleged exposure to $SO_2$, boiler gas, fly ash and coal dust at the Warrick Generating Station, and identifying operators, mechanics, electricians and coal handlers as the alleged exposed employees.

9. McNeely indicated that one hundred (100) persons were allegedly exposed to these substances for four (4) hours per day at Warrick Generating Station.

10. McNeely again requested lung function testing on the Warrick employees.

11. Defendant advised plaintiff in the early spring, 1981, that it intended to conduct health hazard evaluations at both power plants pursuant to the requests filed by McNeely.

12. On June 18, 1981, defendant secured warrants from Patrick Endsley, United States Magistrate for the Southern District of Indiana, authorizing defendant to conduct a walk through examination of defendants plants; the taking of breathing zone air samples, using personal monitoring devices worn by consenting employees over a full eight (8) hour shift; taking bulk samples of unidentified substances and photographs; taking area wide air samples over both a short term and an eight (8) hour shift; to conduct private interviews

of the allegedly affected employees as designated in the request; to conduct medical examinations of the allegedly affected employees including pulmonary function studies, chest x-rays and completion of medical questionnaires; and requiring defendant to provide suitable space for the conduct of the tests and exams together with space, water and electric power for defendant's mobile medical trailer. Defendant gave no notice to plaintiff of its application for these warrants.

13. On June 19, 1981, John Zey, Industrial Hygienist for NIOSH, and Michael Donohue, Physical Assistant, NIOSH, appeared in person at the Warrick and Culley Generating Stations and served administrative warrants under Cause No. IP 81–0130M–01 and IP 81–0129M–01, dated June 18, 1981, upon plaintiff's plant managers at the respective facilities.

14. Prior to the execution, and after service of the warrants, plaintiff, without notice to the defendant, secured a temporary restraining order pursuant to Rule 65(b) of the Fed.R.Civ.P. from the United States District Court, Evansville Division, dated June 19, 1981, and provided a copy of the same to John Zey, who promptly terminated the site visit.

15. The plaintiff alleges that the defendant's regulations providing for the examinations are unenforceable, due to an absence of authority in defendant's enabling statute.

16. The plaintiff alleges that the rules and regulations of NIOSH which permit them to require plaintiff to provide space, electricity and water and to make employees, while on duty, available to NIOSH for the purpose of conducting medical examinations and interviews are unconstitutional in their application. It is the contention of SIGECO that while the employees are on duty they are to perform job related duties and are compensated by SIGECO for the performance of such jobs. Job performance would be impossible if the employees are participating in the NIOSH medical examinations and interviews while they are on duty and being paid by SIGECO.

17. Defendant has made no offer to compensate the plaintiff for its economic losses which will be suffered by it from the loss of productive work from its employees who undergo the tests and studies while on the plaintiff's payroll.

18. The plaintiff asserts that it has no choice but pay the wages of its employees who are undergoing the tests and exams and may be required to pay overtime pay to those and other employees to accomplish the work at the power plant during the period required to complete the exams.

19. A maximum of forty-five (45) minutes to one (1) hour per employee is required to complete the medical questionnaire, pulmonary function study and chest x-ray.

20. A maximum of twenty to thirty (30) minutes per employee may be needed to accomplish all activities related to collecting personal breathing zone air samples.

21. The average hourly cost to plaintiff for each employee at the Warrick Generating Station is $12.01, composed of $9.865 per hour direct wages and $2.47 per hour clerical and supervisory time associated with each hourly employee.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331(a) and personal jurisdiction over the parties.

2. Defendant is an agency of the United States, organized pursuant to 29 U.S.C. § 671.

3. 29 U.S.C. § 671(c)(2) authorizes NIOSH, through the Director of NIOSH (671(e)), to perform all functions of the Secretary of Health and Human Services, under Sections 669 and 670 of Title 29. Section 669(b) of Title 29 grants the Secretary of Health and Human Services the same authority to enter and inspect workplaces and to question employers and employees as provided to the Secretary of Labor under 29 U.S.C. § 657. Section 657 states in part:

(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

4. Pursuant to 29 U.S.C. § 657(g)(2) the Secretary of the Department of Health and Human Services promulgated rules and regulations to implement the provisions of the Occupational Safety and Health Act of 1970. 29 U.S.C. § 651, et seq.. Those rules and regulations pertinent to the action are 42 C.F.R. § 85.1 et seq. Section 669(b) grants this same authority to NIOSH to carry out its research functions.

5. Federal regulations, when within the general scope of NIOSH's statutory authority, have the full force and effect of law. *Public Utilities Commission v. United States*, 355 U.S. 534, 542–43, 78 S.Ct. 446, 451–52, 2 L.Ed.2d 470 (1958); *Maryland Casualty Co. v. United States*, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297 (1920).

6. Federal regulations further define NIOSH authority in carrying out its research functions. 42 C.F.R. § 85.4(b) authorizes NIOSH authority to "... perform tests necessary to the conduct of a health hazard evaluation including medical examinations of employees."

7. 42 C.F.R. § 85.5 authorizes "NIOSH officers ...: To enter without delay any place of employment for the purpose of conducting ... medical examinations, anthropometric measurements, and functional tests of employees within the place of employment ..." Such officers are authorized to employ "reasonable investigative techniques, including medical examinations of employees with the consent of such employees...." § 85.7(c).

8. NIOSH officers are to conduct such examinations through consultation "... with the employer as to the time and place of the medical examination and shall schedule such examination so as to avoid undue disruption of the operations of the employer's establishment." 42 C.F.R. § 85.8.

9. These federal regulations in conjunction with 29 U.S.C. §§ 657(a) and 669(b) establish the authority for NIOSH to conduct private employee interviews and medical examinations on the company's premises during regular working hours. A similar holding is found in *In re Establishment Inspection of Inland Steel*, 492 F.Supp. 1310 (N.D.Ind.1980), also involving an employee requested health hazard evaluation by NIOSH, where the court stated:

Although § 657(a) does not on its face authorize medical examinations of employees in areas being *inspected, the Court considers this procedure, authorized and subject to important limitations under the regulations, to be within a reasonable construction of § 657(a).* While a medical examination can be considerably more intrusive than an interview from an employee's standpoint, the regulations specifically require employee consent before an examination may be undertaken. 42 C.F.R. § 85.7(c). NIOSH is to conduct and bear the cost of any such examinations. 42 C.F.R. § 85.7(c). Thus, from the employer's standpoint, the sort of medical examinations sought here would be only slightly more disruptive than the *private interviews with employees clearly authorized in § 657(a).*

\* \* \* \* \* \*

For the above reasons *the Court considers the type of medical examinations sought here to be authorized by § 657(a) via § 669(a)(6) and § 669(b)*, and it will permit such medical examinations conducted in accordance with applicable regulations.

492 F.Supp. at 1313–14 (emphasis added) (McNagny, J.).

10. The general authority for NIOSH to enter the workplace for research purposes as provided in the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651, *et seq.*) for compliance and enforcement purposes has been upheld. *General Motors Corp. v. Director, NIOSH*, 459 F.Supp. 235, 239 (S.D. Ohio 1978), *remanded on other grounds*, 636 F.2d 163 (6th Cir. 1980). (General Motors petition for writ of certiorari pending, No. 80–1646); *see also, Matter of Keokuk Steel Castings*, 638 F.2d 42 (8th Cir. 1981).

11. Plaintiff's irreparable injury based upon the constitutional claim of taking property without just compensation, based upon use of space, electricity and water for the purpose of NIOSH conducting medical examinations and interviews, is unfounded. 42 C.F.R. § 85.8 states in part:

> An employer shall, in request of the NIOSH officer, provide suitable space, if such space is reasonably available, to NIOSH to conduct private interviews with, and examinations of employees...

The underlying purpose for promulgation of such a rule is to encourage cooperation between the employer and NIOSH in NIOSH's enacted express purpose of assuring "so far as possible every working man and woman ... safe and healthful working conditions ..." 29 U.S.C. § 651(b). The regulation sets a standard of "reasonableness" in light of the congressional purpose of promoting worker health.

12. The same standard set forth above holds for use of water and electricity by NIOSH when those utilities are paid for by SIGECO. Furthermore, financial injury, in and of itself, does not constitute irreparable harm in support of injunctive relief. *See, Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *National Association of Internal Revenue Employees v. Nixon*, 349 F.Supp. 18, 21 (D.D.C.1972), citing *Tele-Controls, Inc. v. Ford Industries, Inc.*, 388 F.2d 48 (7th Cir. 1967).

13. Plaintiff's constitutional claim for loss of property without just compensation is for lost money it must pay the em-ployees while they undergo the tests and examinations NIOSH wishes to administer. In other words, SIGECO complains that it must provide all the people, at its cost, to do their (NIOSH) research. This alleged constitutional issue can be dismissed through a showing that the government, by NIOSH regulations or otherwise, simply does not require SIGECO to pay its employees for such time. NIOSH claims to take the position that this question is one to be determined by the employer and employee.

14. SIGECO claims that non-regulation by NIOSH requiring employee payment does not answer the constitutional issue. Plaintiff contends a "Catch 22" situation requiring the injunction since plaintiff faces a "real and present danger of a charge of unfair labor practice under the Labor Management Relations Act (LMRA) and potential discrimination charges under 29 U.S.C. § 660(c) if it refuses to pay those employees who elect to participate in the NIOSH examinations because the examinations have been requested by plaintiff's employees through their union." 29 U.S.C. § 660(c) covers employees discriminated against for institution of any proceeding or exercise of any right afforded by the OSHA Act. Counsel for plaintiff admits an inability to find a case directly on point with their claimed constitutional issue.

However, case law on point is irrelevant at present due to the speculative nature of the alleged irreparable injury. Plaintiff has merely asserted a fear of potential injury. The alleged constitutional violation is not ripe. There has been no showing of irreparable harm, *but see, Mullis v. Arco Petroleum Corp.*, 502 F.2d 290 (7th Cir. 1974) (Stevens, J.) (irreparable injury not in itself sufficient for preliminary injunction) or assuming plaintiff's alleged injury, an inability to pursue legal remedy (*i. e.* through grievance procedure of the LMRA).

15. The burden is on the plaintiff to establish the need for a preliminary injunction. *McCreery Angus Farms v. American Angus Association*, 379 F.Supp. 1008, 1016 (S.D.Ill.1974), *aff'd mem.*, 506 F.2d

1404 (7th Cir. 1974). The Court must balance the factors. *Banks v. Trainor*, 525 F.2d 837 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). The factors are well established in the Seventh Circuit as set forth in *Reinders Bros. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 48, 49 (7th Cir. 1980), citing *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096 (7th Cir. 1976). First, the plaintiff has not demonstrated a likelihood of success on the merits due to the proper promulgation of rules and regulations governing NIOSH under the authority of the OSHA Act. Clearly, the intent of the NIOSH is to permit research through entry and medical inspection on employer's premises. Secondly, the plaintiff has not adequately demonstrated irreparable injury if the injunction is not issued. Plaintiff merely speculates as to injury resulting from failure to pay employees for time while participating in NIOSH tests and has not reasonably attempted to comply with government effort to promote worker safety through a reasonable request for reasonable space and utilities. Thirdly, the threatened injury to the plaintiff does not outweigh threatened harm the injunction would inflict on defendant. The injunction would prohibit NIOSH from conducting its congressionally mandated investigations to determine potential toxicity of substances that the employees are exposed to in the workplace. The adverse health effects on employees can best be determined through such workplace investigation and plaintiffs have not adequately demonstrated harm or inability to recover for such harm. Finally, public interest demands the injunction be denied as recently set forth by the Supreme Court in *American Textile Manufacturers Institute, Inc., et al. v. Donovan, Secretary of Labor, et al.,* —— U.S. ——, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981). The legislative history behind the OSHA Act (dealing with promulgation of occupational safety and health standards dealing with toxic materials or harmful physical agents through exposure to cotton dust) established that "Congress was fully aware that the [OSHA] Act would impose real and substantial costs of compliance on industry, and believed that such costs were part of the cost of doing business." —— U.S. ——, 101 S.Ct. at 2493. Congress was aware that costs to employers would be caused through NIOSH research, however, public policy requires such research as a cost of business to discover harmful health agents in the workplace.

16. In view of the foregoing, judgment does hereby issue, declaring the law with the defendant and against the plaintiff.

The Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.