582 F.2d 1122
 6 O.S.H. Cas.(BNA) 1865, 1978 O.S.H.D. (CCH) P 22,946
In the Matter of Establishment Inspection of Blocksom and
Company, a corporation.
Appeal of Blocksom and Company.
BLOCKSOM AND COMPANY, a corporation, Plaintiff-Appellant,
v.
Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Defendant-Appellee.
 No. 77-2254.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 30, 1978.
Decided Aug. 16, 1978.
 
 John D. Raikos, Indianapolis, Ind., for plaintiff-appellant.
 John A. Bryson, U. S. Dept. of Labor, Washington, D. C., for defendant-appellee.
 Before PELL and BAUER, Circuit Judges, and HARPER, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 Appellant Blocksom and Company (Blocksom) is engaged in the business of manufacturing filler materials for products such as mattresses and furniture cushions at its plant in Michigan City, Indiana. In February 1976, the Occupational Safety and Health Administration acted on a recently received employee complaint by dispatching safety compliance officers to inspect the plant. No warrant for the search was obtained, but after the officers explained that 29 U.S.C. § 657(a) authorized their entry without a warrant, Blocksom permitted the inspection. The Secretary of Labor thereafter issued numerous citations for violations of safety standards, which Blocksom timely contested, invoking both factual and constitutional grounds as defenses to the alleged violations. We are advised that proceedings before the Occupational Safety and Health Review Commission, See 29 U.S.C. §§ 651(b)(3), 658(a), 659(a) & (c), 660(a) & (b), 661, are still pending.
 
 
 2
 In September 1976, in response to another employee complaint, four industrial hygienists arrived at the Blocksom plant to conduct a health inspection. Blocksom refused permission to enter, so an inspection warrant was obtained from a United States Magistrate for the Northern District of Indiana. The inspectors returned to Blocksom, but the company, acting through Dean Sassaman, its Vice President, again refused entry. The Secretary instituted civil contempt proceedings in the district court.
 
 
 3
 Shortly thereafter, Blocksom filed a complaint for declaratory and injunctive relief on the ground that the Occupational Safety and Health Act, 29 U.S.C. § 651 Et seq., was unconstitutional because it violated the Fourth Amendment, delegated legislative power to the Secretary, constituted a taking of Blocksom's property without just compensation in violation of the Fifth Amendment, and deprived Blocksom of procedural protections guaranteed by the Sixth and Seventh Amendments. The district court consolidated Blocksom's complaint with the pending contempt action, dismissed Blocksom's complaint as premature, and cited Sassaman for civil contempt (having addressed his and Blocksom's defenses on the merits) and ordered him to purge the contempt by allowing inspection. Blocksom has appealed, raising only its Fourth Amendment and impermissible delegation theories as grounds for reversal.
 
 
 4
 In our opinion the district court correctly dismissed Blocksom's complaint for declaratory and injunctive relief. Congress established the Review Commission as a forum independent of the Secretary of Labor for the adjudication of all factual and statutory defenses to the Secretary's enforcement actions. See the statutory provisions cited Supra. Its final orders are reviewable as of right in the Courts of Appeals and by writ of certiorari in the Supreme Court. 29 U.S.C. § 660(a); 28 U.S.C. § 1254. That review can include consideration of any viable constitutional defenses to enforcement. To allow Blocksom to bypass the review procedures Congress has established would create a serious risk that "important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were covered by the Act." W.E.B. DuBois Clubs of America v. Clark, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967) (per curiam); Accord, Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 751, 767-74, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947). The Supreme Court has twice affirmed decisions of three-judge district courts dismissing actions such as this one, where statutory and/or factual defenses were raised before the Commission. Frank Irey, Jr., Inc. v. Hodgson, 354 F.Supp. 20 (N.D.W.Va.1972), Aff'd, 409 U.S. 1070, 93 S.Ct. 682, 34 L.Ed.2d 659; Lance Roofing Company, Inc. v. Hodgson, 343 F.Supp. 685 (N.D.Ga.1972); Aff'd, 409 U.S. 1070, 93 S.Ct. 679, 34 L.Ed.2d 659. See also Keystone Roofing Company, Inc. v. Occupational Safety and Health Review Commission, 539 F.2d 960, 963-64 (3d Cir. 1976); Stockwell Manufacturing Company v. Usery,, 536 F.2d 1306, 1309 (10th Cir. 1976). We conclude that Blocksom may not assert its defenses to the Secretary's citations or its generalized interest in the Act's nonenforcement by means of this independent action.
 
 
 5
 On the other hand, we believe that Sassaman (and, in effect, Blocksom) are entitled to argue for reversal of the district court's citation for civil contempt on the asserted bases that the magistrate's warrant did not comply with the Fourth Amendment and that the entire scheme of the Act is fatally flawed by an unconstitutional delegation of legislative authority to the Secretary. Refusal to comply with a facially valid warrant would surely be a poor strategy for obtaining judicial review of such claims, because it is no defense to a charge of Criminal contempt that the order disobeyed was invalid. United States v. United Mine Workers of America, 330 U.S. 258, 293-94, 67 S.Ct. 677, 91 L.Ed. 884 (1947). But, fortunately for Sassaman, no criminal contempt charge was made here. The purposes of Civil contempt orders are to coerce compliance with the underlying order and/or to compensate the complainant for loss sustained by disobedience. Id. at 303-04, 67 S.Ct. 677. Accordingly, civil contempt may be defended on the ground that the underlying order was erroneously issued. Id. at 295, 67 S.Ct. 677; Squillacote v. Local 248, Meat & Allied Food Workers, 534 F.2d 735, 746 (7th Cir. 1976); Lewis v. S. S. Baune, 534 F.2d 1115, 1119 (5th Cir. 1976).
 
 
 6
 As we have said, an inspection warrant was obtained in this case. Blocksom argues nonetheless that the Act's inspection provision, 29 U.S.C. § 657(a), is unconstitutional because the provision does not contemplate the issuance of warrants which the Fourth Amendment requires. Shortly before oral argument here, the Supreme Court decided Marshall v. Barlow's Inc.,--- U.S. ----, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). From Barlow's we now know that the Fourth Amendment does in fact require warrants to be issued before OSHA inspectors may enter the premises of those who decline to allow warrantless entry. The Court also made it clear that despite Congress' failure to include a warrant requirement in § 657(a), if process was obtained that satisfied Fourth Amendment requirements, inspection under § 657(a) would be perfectly permissible. --- U.S. at ----, n.23, 98 S.Ct. 1816, 56 L.Ed.2d 305. Accordingly, we reject the argument that inspection based on an adequate warrant would violate the Fourth Amendment.
 
 
 7
 The question obviously becomes whether the warrant issued in this case comports with Fourth Amendment requirements. We believe the district court should have an opportunity to reassess its contempt citation in the light of the Barlow's decision. We direct the court's attention particularly to footnote 22 of the decision, in which the Supreme Court makes the point that "(d)elineating the scope of a search with some care is particularly important where documents are involved." The warrant issued in this case directed Blocksom to produce for inspection all "records, files, (and) papers" "bearing on" the safety of Blocksom's working environment. Even if the district court should decide that the information put before the magistrate demonstrated probable cause for an inspection, it may well decide that the documentary production required by the warrant was described with inadequate specificity. We express no views on the proper disposition of these questions on remand.
 
 
 8
 Blocksom also urges us to hold the entire Act unconstitutional because Congress went too far in delegating the legislative authority to create safety and health standards to the Secretary. Article I, Section 1, of the Constitution vests legislative powers in the Congress, and the Congress may not constitutionally "abdicate, or . . . transfer to others the essential legislative functions with which it is thus vested." Panama Refining Co. v. Ryan, 293 U.S. 388, 421, 55 S.Ct. 241, 248, 79 L.Ed. 446 (1935). But
 
 
 9
 (t)he Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility.
 
 
 10
 Id. The legislation struck down in Panama Refining Co. was invalidated only because "Congress has declared no policy, has established no standard, has laid down no rule." Id. at 430, 55 S.Ct. at 252. Where a policy is declared and standards adequate to guide and test its execution have been articulated, the Congress cannot be said to have delegated its legislative functions. Opp Cotton Mills, Inc. v. Administrator of Wage and Hour Division of Department of Labor, 312 U.S. 126, 144, 61 S.Ct. 524, 85 L.Ed. 624 (1941); Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398-99, 60 S.Ct. 907, 84 L.Ed. 1263 (1940).
 
 
 11
 Applying this test here, we can only conclude that Blocksom's argument is without persuasive merit. The Act plainly articulates its concern with "personal injuries and illnesses arising out of work situations," 29 U.S.C. § 651(a), and its policy "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." Id., § 651(b). The occupational safety and health standards which the Secretary is authorized to promulgate are defined as rules requiring practices, methods, and processes "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." Id., § 652(8). The Act mandates the initial adoption of any federal or national consensus standards that will "result in improved safety or health" for covered employees, Id., § 655(a), and provides that in the event of conflict between such standards, the one shall be adopted which assures "the greatest protection." Id. New or modified standards may be promulgated if they will serve the purposes heretofore referred to. Id., § 655(b)(1). In the area of toxic materials or harmful physical agents, the Secretary is directed to "set the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity." Id., § 655(b)(5). Considerations are to include the "latest available scientific data in the field, the feasibility of the standards, and experience gained" in enforcing the Act, as well as "the highest degree of health and safety protection for the employee." Id. Variances are available if an employer demonstrates that it is impossible to comply because of unavailability of necessary personnel, materials, and equipment, while the employer does the best he possibly can with what is available and adopts a plan to reach compliance as soon as possible. Id., § 655(b)(6)(A). Variances also may be obtained for approved experiments designed to find new methods of promoting health and safety, Id., § 655(b)(6)(C), or for processes which achieve equally safe and healthy results as those called for by published standards, Id., § 655(d).
 
 
 12
 We see no reason to carry the present exercise any further. It is true that no one could necessarily predict from the statutory scheme exactly what regulations would be promulgated in any given industry, but that is not necessary. What is perfectly clear is that the Congress has chosen a policy and announced general standards which guide the Secretary in establishing specific standards to assure the safest and healthiest possible working environments, and which enable the courts and the public to test the Secretary's faithful performance of that command. Nothing more is required. See Bloomfield Mechanical Contracting, Inc. v. Occupational Safety and Health Review Commission, 519 F.2d 1257, 1263 (3d Cir. 1975).
 
 
 13
 For the reasons we have stated, the judgment of the district court on Blocksom's complaint is affirmed, and the judgment of civil contempt is vacated and the matter remanded for further proceedings consistent herewith.
 
 
 14
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 *
 Senior Judge Roy W. Harper of the Eastern and Western Districts of Missouri is sitting by designation