PELTON CASTEEL, INC., et al.,
Plaintiff-Appellant,

v.

Ray MARSHALL, Secretary of Labor,
United States Department of Labor,
Defendant-Appellee.

No. 78–1770.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1978.

Decided Dec. 20, 1978.

John W. Brahm, Milwaukee, Wis., for plaintiff-appellant.

Charles I. Hadden, Washington, D. C., for defendant-appellee.

Before CUMMINGS, PELL and WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

The question before us is whether the district court properly denied Pelton Casteel, Inc.'s motion to quash an administrative inspection warrant, simultaneously holding that company in civil contempt for refusing to comply with the warrant. We affirm.

The warrant involved in this case originally stemmed from an inspection of the Company's former plant in Milwaukee, Wisconsin, by compliance officers representing the Secretary of Labor under the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq.). Such officers are authorized to inspect workplaces and issue citations describing safety and health violations and to fix abatement times and civil penalties if they discover violations of the Act (29 U.S.C. §§ 657–659). The Act is administered by the Department of Labor's Occupational Safety and Health Administration (OSHA).

Pursuant to that statute and regulations thereunder representatives of the petitioner Secretary of Labor inspected the Company's Milwaukee plant on December 20, 1973. As a result of this health inspection, a "nonserious violation" citation [1] was issued on June 5, 1974, with respect to six items.[2] Various abatement dates were proposed together with penalties of $240. Since the Company did not contest the citation within 15 days, it became a final abatement order under 29 U.S.C. § 659(a).[3]

On September 12 and 13, 1977, OSHA inspectors conducted another health inspection of the Milwaukee plant to determine compliance with the 1974 abatement order and found unabated "other than serious" exposures to respirable silica. This resulted in the imposition of various abatement dates but no penalty. At the same time, there was an inspection with respect to coal tar pitch volatiles resulting in a November 22 "serious violation" citation with a $600 penalty and additional abatement dates, but the serious portion of this citation was withdrawn by the Area Director of OSHA on December 13, 1977. However, his letter said the "serious" designation was being withdrawn "only because of a technicality in procedure * * * and that the citation did reflect a serious hazard and that the withdrawal of the citation in no way indicates that a potential hazard does not exist" (App. 39). On April 6, 1978, the Area Director reminded the Company that OSHA expected a report from the Company as to corrective action with respect to all violations. The letter of April 6 closed by stating: "May we have this report by April 17, 1978, so this file can be closed." The Company submitted the requested report by letter of April 11, 1978 (App. 22).

In March 1977, the Company opened a new facility in Oak Creek, Wisconsin. It

---

1. Nonserious violations are not defined in the Act, but "serious" violations are defined in 29 U.S.C. § 666(j). (See note 9 infra.)

2. These items concerned: (1) respirable crystalline silica dust, (2) respirable inert or nuisance dust, (3) iron oxide or copper fumes, (4) excessive noise, (5) failure to monitor for asbestos fibers, and (6) failure to provide medical examinations relative to asbestos exposure.

3. The Secretary's representatives conducted a safety inspection of the Milwaukee plant on May 16, 1976, and issued an "other than serious" citation alleging 13 violations involving mechanical problems and imposing a penalty of $150. This case does not involve safety inspections so that the May 16 inspection is not germane to this appeal.

became fully operational in May 1977. Some of the operations which had given rise to the 1974 citation were moved to the new Oak Creek plant, whereas others remained at the old Milwaukee plant (App. 22). The latter were the subject of the September follow-up inspection at the Milwaukee plant, and the moved operations were the target of the attempted inspection at issue in this case. OSHA had asserted that Casteel asked for more time to abate the 1974 violations on the ground that some of the operations would be moved to the new plant, which would ameliorate the problem. Casteel has not contested this. On September 13, 1977, on the occasion of the follow-up inspection of the Milwaukee plant, Fred Boelter, compliance safety and health officer of OSHA, allegedly told Harold M. Sotski, the Company's vice president, manufacturing, that "any operation that had been previously cited [by OSHA] but was no longer at the Milwaukee location would now be removed from the active citation list." No employee complaints have been submitted to the Secretary of Labor concerning the Oak Creek facility. Both plants are still in operation.

On March 27, 1978, two compliance officers of OSHA presented themselves at the Company's Oak Creek plant to conduct an investigation. One of the officers, Fred Boelter, told Company Vice President Sotski that "the purpose of the investigation was a follow-up inspection as well as a new inspection at a new facility." However, Boelter admitted that the investigation was not precipitated by an employee complaint. When Sotski refused entry, Boelter told him that because of his refusal, he should expect a more thorough and detailed inspection when the compliance officers returned (App. 22).

On March 28, Boelter and a fellow compliance officer of OSHA applied to Magis-trate McBride in Milwaukee for an inspection warrant for the Oak Creek plant. In paragraph 2 of the application the officers stated that the desired inspection was part of a follow-up to a previous inspection at the Company's Milwaukee workplace where they had found that the Company's employees were exposed to numerous "serious health hazards" involving "respirable quartz silica, respirable nuisance dust, iron oxide and copper fumes." Coal tar pitch volatiles, the cause of the serious violation citations of November 22, 1977, were not mentioned, perhaps because coal tar pitch was apparently used only at the Milwaukee plant. The applicants stated that an inspection of the new plant was required to ensure abatement of the previous health hazards.

The application also stated in "boiler-plate" language:

"6. The inspection and investigation will extend to the factory, plant, establishment or other area, workplace, or environment where work is performed by employees of the employer, and to all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records, files, papers, processes, controls, and facilities) bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized health hazards that are causing or are likely to cause *death or serious physical harm* to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act." (Emphasis supplied.)[4]

Acting upon this application and pursuant to Section 8(a) of the Act (29 U.S.C. § 657(a)) Magistrate McBride issued the

---

4. The purpose of the search as described in this paragraph of the application (beginning with the phrase "bearing on whether") tracks the language of Section 5(a) of the Act, which establishes the duty of employers to "furnish * * * a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm" and to "comply with occupational safety and health standards * * *." (29 U.S.C. § 654(a).) The italicized phrase is also part of the statutory definition of what constitutes a "serious" violation. See note 9 *infra.*

requested warrant on the same date after finding that probable cause had been shown by OSHA's sworn application. The warrant stated that it was "based on the grounds set forth in this warrant application" and was issued so that OSHA could determine whether the Company's Oak Creek place of employment was free "from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act." This language was derived from paragraph 6 of the application.

Two days later, the same compliance officers returned to the Oak Creek plant with the warrant for inspection signed by Magistrate McBride. Boelter repeated that the inspection was a follow-up of the old citations at the Milwaukee plant as well as a new inspection, although there were no employee complaints. Again Sotski denied entry to the compliance officers.

On April 24, 1978, the Secretary of Labor petitioned the district court to hold the Company, Vice President Sotski and factory superintendent Jerome Dziedzic in civil contempt of court for their refusal to comply with the March 28 inspection warrant. Nine days later the Company filed a motion to quash the inspection warrant. The motion was supported by two affidavits. The affidavit of superintendent Dziedzic stated that in 1977 and in 1978 there had been no occupational illnesses, no fatalities, and no permanent disabilities at the Oak Creek facility and that in 1977 there had been only 11 lost workday cases and in 1978 only one. Sotski's affidavit showed that the Company had received no serious citations at its Milwaukee plant except the coal tar pitch one that had been withdrawn. The affidavit also showed that in constructing its Oak

Creek plant the Company had contracted with environmental engineers to insure installation of equipment in its new plant according to OSHA standards, that the Company had spent in excess of $1,000,000 to comply with OSHA's dust and fume standards, and that an "in-plant engineering department constantly monitors equipment to insure compliance with OSHA's standards" (App. 22).

On May 5, 1978, the district court heard legal arguments with respect to the Secretary's petition for contempt and the Company's motion to quash the inspection warrant. At the conclusion of the arguments, the district judge announced his decision holding the respondents in contempt and denying their motion to quash the inspection warrant. First of all, he ruled that the obtaining of a warrant by the Secretary avoided a Fourth Amendment problem, citing *Marshall v. Chromalloy American Corporation,* 433 F.Supp. 330 (E.D.Wis.1977).[5] He then held that the Magistrate had jurisdiction under Rule 1(7) of the Rules of the United States District Court for the Eastern District of Wisconsin promulgated under 28 U.S.C. § 636(a).

As to the representation to the Magistrate that "serious health hazards" had been found at the Company's Milwaukee plant, Judge Gordon stated that this did not mislead the Magistrate because the application "described in detail the nature of the inspection that was to be undertaken" (Tr. 22). Probable cause was found to exist because the "moving of the portion of the plant which produced the [silica] pollutant raised a fair question in the Plaintiff's mind that this offensive material may be continuing in the [new] plant" (Tr. 33).

A fortnight later, the district court entered an order embodying his oral opinion and stating that the respondents could purge themselves of contempt by permitting compliance officers to conduct an in-

---

**5.** Judge Gordon pointed out that *Matter of Northwest Airlines, Inc.,* 437 F.Supp. 533 (E.D. Wis.1977) was *contra* to *Chromalloy American* insofar as the *Northwest Airlines* court concluded that if there was a flaw in the procedure under 29 U.S.C. § 657(a) it was not salvageable by the issuance of a warrant. This Court has recently affirmed *Northwest Airlines,* 587 F.2d 12 (7th Cir. 1978) on the ground that the application for the warrant was inadequate. *Chromalloy American* is presently under advisement in this Court.

spection of the Oak Creek plant. Respondents were also required to pay the Secretary of Labor $100 for litigation costs he had incurred, and the Secretary was authorized to reapply for "other penalty" if the respondents should not comply within 20 days. However, the order was stayed pending appeal.

### The Magistrate's Jurisdiction

■ The Company first argues that Magistrate McBride was without jurisdiction to issue this warrant. However, the Magistrate Rules of the United States District Court for the Eastern District of Wisconsin provide that each magistrate appointed by that court is authorized to perform the duties prescribed by 28 U.S.C. § 636(a). That statute permits a district judge (1) to designate a magistrate to determine any pretrial matters pending before the court (with certain immaterial exceptions) and to conduct hearings, including evidentiary hearings, and (2) to assign a magistrate such additional duties as "are not inconsistent with the Constitution and laws of the United States." Rule 1(7) of the district court's local rules (which are expressly authorized as to magistrates by 28 U.S.C. § 636(b)(4)) provides that each magistrate appointed by the court below is authorized to issue administrative inspection warrants. We fully agree with the decision in *Marshall v. Multi-Cast Corporation,* 6 OSHC 1486, 1490 (N.D.Ohio, 1978), that the combination of 28 U.S.C. § 636(a) and a pertinent local rule "is a more than adequate foundation for the authority of the magistrates in this district to issue administrative inspection warrants to OSHA representatives." [6] Moreover, we recently affirmed *Northwest Airlines, Inc.,*

437 F.Supp. 533 (E.D.Wis., 1977), where the district court held that the magistrate did have jurisdiction. *In the Matter of: Establishment of Inspection: Northwest Airlines, Inc.,* 587 F.2d 12 (7th Cir. 1978). Throughout that opinion we referred to what information must be in an application for an OSHA inspection warrant to enable the magistrate to perform his functions.[7] Thus we necessarily concluded *sub silentio* that a magistrate does have jurisdiction to issue an inspection warrant of this nature. We adhere to that decision in this case.

### This Warrant Does Not Fail Because of a Misrepresentation of Fact

Paragraph 2 of the application for the inspection warrant provides as follows:

"The desired inspection is a part of a followup to a previous inspection at the employer's former workplace wherein it was found that the employer's employees were exposed to numerous health hazards such as respirable quartz silica, respirable nuisance dust, iron oxide and copper fumes. These exposures were deemed *serious health hazards* and now require subject inspection to ensure abatement of said previously identified health hazards and violations of the safety and health regulations of the Act." (Emphasis supplied.)

The Company insists that the use of the words "serious health hazards" in paragraph 2 was a misrepresentation of fact that may have illegally motivated the magistrate to issue the warrant,[8] since there had never been any citation of the Compa-

---

**6.** See also *Marshall v. Chromalloy American Corporation,* note 5 *supra.*

**7.** In *Northwest Airlines* we invalidated an OSHA inspection warrant on the ground that the application for the warrant was inadequate because it only told the magistrate that "The desired inspection is also part of an inspection and investigative program designed to assure compliance with the Act and is authorized by section 8(a) of the Act." While paragraph 3 of the present application is identical, the rest of the application contains sufficient information

to establish probable cause, as shown *infra.* Cf. *Weyerhaeuser Company v. Marshall,* 452 F.Supp. 1375 (E.D.Wis. decided July 3, 1978); *California v. Salwasser,* 6 OSHC 1602 (Cal.Super.Court 1978).

**8.** In this respect the Company relies on *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 2677, 57 L.Ed.2d 667; *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943; and *United States v. Carmichael,* 489 F.2d 983, 988 (7th Cir. 1973).

ny for a "serious violation"[9] issued by OSHA with respect to these four hazards. As the appellee points out, paragraph 2 of the application does not state that the Company had been cited for a serious violation, but merely that there were violations which constituted serious health hazards. "Nonserious" violations are defined by OSHA as violations which do not fall within the statutory definition of serious, but which nonetheless have "a direct or immediate relationship to occupational safety or health" (App. 29). Certainly, some such violations constitute what would commonly be thought to be serious health hazards. Moreover, as counsel for OSHA informed Judge Gordon, OSHA has reevaluated exposure to respirable silica based on research done since the 1974 citation, and has found such exposure to be a potentially serious hazard.[10] Indeed in a field memorandum issued to its area directors in June 1977, OSHA has reclassified silica exposure violations as "serious" (Tr. 7). Consequently, it is immaterial that paragraph 6 of the warrant application and the latter part of the warrant employ language which also appears in the statutory definition of a serious violation.

▪▪▪ In any event the magistrate was not misled, because he did not rely on the existence of a "serious" violation by the Company. His warrant does not mention such a violation. Moreover, he was told exactly what had been found at the old plant that gave rise to concern that a violation might exist at the new plant. The right to inspect under the Act is not limited

to conditions that could give rise to "serious" violations,[11] so that it was not necessary for OSHA to establish the existence of such a violation in order to obtain a warrant. Although the language of the application might have been drafted with more care, the mere reference to serious health hazards was not materially misleading, for the Company has not shown that respirable silica exposure is so harmless as to justify its refusal to permit inspection. Accordingly, we would be unwarranted in overturning the district court's finding that there was "no evidence that the magistrate was misled" (Tr. 22).

The Company has argued that the fact that both paragraph 6 of the warrant application and the latter part of the warrant refer to "death or serious physical harm," which is part of the definition of a "serious violation," shows that the magistrate was misled into believing such a violation has been established. We disagree. As previously noted, the disputed language tracks the statutory duties of the employer, which include avoiding both serious violations and other violations of the Act. Moreover, read in the context of the whole application and whole warrant, the disputed passages are mostly boilerplate descriptions of the scope and object of the search, not descriptions of the grounds for thinking a search of this particular facility was necessary. Those grounds were set out in paragraph 2 of the application, describing the results of the prior inspection. It is immaterial that in September 1977 an OSHA representative

---

**9.** The Act defines a serious violation in 29 U.S.C. § 666(j) as follows:

"For purposes of this section [17(j)], a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

**10.** The November 22, 1977, citation for respirable silica at the Milwaukee plant was labeled "other [than serious]" but this may have been

because the level of silica was low or because the procedures for citing a violation as "serious" were not followed. This does not undercut OSHA's contention that respirable silica is now known to have the potential to cause both serious health hazards and violations of the Act which may probably be labeled "serious."

**11.** Section 657(a) of Title 29 authorizes inspections and Section 658(a) provides for citations where inspection reveals a violation of a requirement of Section 654, which includes compliance with all health and safety standards (see note 4, *supra*), or a violation of any standard, rule, order or regulation promulgated under the Act.

told Vice President Sotski that any previously cited Milwaukee operation moved to Oak Creek would be removed from the active citation list and that the file on the Milwaukee plant was closed on April 11, 1978 (App. 22), because the inspection at issue here was a follow-up inspection on silica and kindred operations that had been moved to the Oak Creek plant as well as a new inspection of that facility (App. 22).

## Showing of Probable Cause

█ In *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305, the Supreme Court, delineating what would constitute probable cause justifying the issuance of an OSHA inspection warrant, held as follows:

"Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' *Camara v. Municipal Court, supra* [387 U.S. 523] at 538, 87 S.Ct. [1727] at 1736 [18 L.Ed.2d 930]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights. We doubt that the consumption of enforcement energies in the obtaining of such warrants will exceed manageable proportions." (436 U.S. at 320, 98 S.Ct. at 1824.)

Here the magistrate found that the grounds stated in the application for the inspection warrant satisfied the probable cause requirement, and the district court agreed, stating as follows:

"I find that probable cause exists. The moving of the portion of the plant which produced the [silica] pollutant raised a question of—fair question in the Plaintiff's mind that this offensive material may be continuing in the plant. The existence of two prior violations all demonstrate that this was not a mere fishing expedition but a search for—reasonable search to find if there were a correction." (Tr. 23).

Although this finding antedated *Barlow's,* it satisfies the specific evidence prong of the foregoing bifurcated probable cause test established in that case. There had been actual violations of the Act's compliance and abatement requirements at the Company's Milwaukee plant, and the Company endeavored to abate those violations in part by moving its operations involving silica to the new facility at Oak Creek. Therefore, it would seem most appropriate for OSHA to inspect the new plant to determine whether there are unabated violative conditions there. If the Company's new equipment and monitoring are as represented in Vice President Sotski's affidavit, OSHA should soon be satisfied that the prior violations have abated. It should be obvious that OSHA does not have to take the employer's word that its new facilities successfully abate the problem.

While we cannot condone the OSHA officers' alleged threat to conduct a more thorough and detailed inspection if the Company should refuse voluntary inspection, that cannot invalidate the inspection warrant.[12] The Company may justifiably complain if the compliance officers should attempt to

---

12. If there had been a material misrepresentation in the application for the warrant, the threat might be some evidence that the misrepresentation was intentional or reckless, which would be necessary to invalidate the warrant under the authority of the cases cited in note 8 *supra.* However, since the application was not

engage in an over-broad inspection. Compare *Dravo Corporation v. Marshall,* 578 F.2d 1373 (3d Cir. 1978).[13]

The order of May 19, 1978, is affirmed.

materially misleading, we need not reach this question.

13. There the court of appeals affirmed without opinion a district court decision rejecting an attack on the breadth of a warrant. (Civil Action No. 77–284, W.D.Pa., decided April 5, 1977.) In the present case no such attack was made below nor in the Company's briefs on appeal.