In the Matter of Establishment Inspection of INLAND STEEL COMPANY.

Misc. No. 414.

United States District Court,
N. D. Indiana,
Hammond Division.

June 18, 1980.

David T. Ready, U.S. Atty. by Charles B. Miller, Asst. U.S. Atty., Hammond, Ind., for petitioner; Sidney Edelman, Asst. Gen. Counsel for Public Health, Rockville, Md., Guy Collier and Glen Drew, Attys., Public Health Div., Dept. of Health, Education and Welfare, of counsel.

## MEMORANDUM AND WARRANT

McNAGNY, District Judge.

On March 21, 1980 the United States of America, on behalf of a representative of the National Institute for Occupational Safety and Health ("NIOSH"), filed an application for an inspection warrant in order to conduct workplace inspections pursuant to the Occupational Safety and Health Act of 1970 (the "Act"), 29 U.S.C. § 651, *et seq.* The target workplaces consist of certain areas in the Inland Steel Company Indiana Harbor Works, East Chicago, Indiana. The application seeks a warrant authorizing (1) physical inspection of these areas, including the taking of air, material and surface wipe samples, (2) medical examinations and private interviews of employees in these areas, and (3) examination and copying or abstracting of the medical and job history records of employees in these areas.

I

Authority for the inspection is asserted under Section 8(a) of the Act, 29 U.S.C. § 657(a), per Sections 20 and 22, 29 U.S.C. §§ 669, 671. More specifically, the applica-

tion is brought under § 669(a)(6), which provides in part that

> [The Secretary of HEW] shall determine following a written request by any employer or authorized representative of employees, specifying with reasonable particularity the grounds on which the request is made, whether any substance normally found in the place of employment has potentially toxic effects in such concentrations as used or found; and shall submit such determination to both employers and affected employees as soon as possible.[1]

Section 669(b) provides that in order to carry out his functions and responsibilities under § 669, "[t]he Secretary of [HEW] is authorized to make inspections and question employers and employees as provided in [29 U.S.C. § 657]." Thus the inspection and interviewing powers granted the Secretary of Labor in § 657, at least in subsections (a) and (b), can be brought into play.

Through § 669(e) and § 671(c)(2) and (e), the director of NIOSH (the "Director") is authorized to perform all functions of the Secretary of HEW under § 669, including therefore the performance of § 657 inspections. Through his representative the Director now seeks to exercise this authority here.

## II

■ A warrant authorizing the inspection sought here must be based on some showing of administrative probable cause. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978); *Burkart Division of Textron v. Marshall*, No. 79–1853, slip op. at 4–5 (7th Cir. May 27, 1980). The Director's entitlement to inspect

> will not depend on his demonstrating probable cause to believe that conditions in violation of [the Act] exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of

a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]."

*Barlow's, supra*, 436 U.S. at 320, 98 S.Ct. at 1824 (citation omitted). This "relaxed or flexible standard of administrative probable cause" applies even where, as here, a warrant is sought on the basis of specific evidence of an existing dangerous condition. *See Burkart Division, supra*, at 4–5.

■ A warrant application based on specific employee complaints or requests "must at least inform [the Court] of the substance of the employee complaints, so that [the Court] may exercise independent judgment as to whether an inspection is justified, rather than acting as a mere rubber stamp validating the decision already reached by [the Director]." *Ibid.*, at 10 (citation omitted). Employee complaints underlying an application need not be sworn as long as the official requesting the warrant supports his application with a sworn affidavit. *Ibid.*, at 11. If a warrant application describes the contents of employee complaints received, and such contents can be interpreted to fulfill reasonable statutory standards calling for an inspection, then an adequate showing of administrative probable cause has been made.

■ Here, the warrant application itself asserts in conclusory terms that an inspection is being sought because of employee requests. Standing alone, this would not justify issuance of a warrant. However, the affidavit of Shawn D. McQuilkin, a Regional Industrial Hygienist with NIOSH, accompanies the application. Mr. McQuilkin's affidavit details the substance of the employee requests referred to in the application, and also includes copies of those requests as attachments.

Mr. McQuilkin's sworn recitation of the contents of the requests specifies with rea-

---

1. An investigation conducted under § 669(a)(6) pursuant to employee requests is administra-tively known as a "health hazard evaluation." 42 C.F.R. § 85.2(d).

sonable particularity the grounds on which they were made—(1) concern due to alleged respiratory and high blood pressure problems among employees working in the number 2 coke plant benzol-phenol building, the number 2 coke plant laboratory, the by products area, and the quality control center (water and waste laboratory); and (2) concern due to alleged employee exposure to trichlorethane when cleaning overhead crane hooks in the 76 inch hot strip, plant 2, before the hooks are x-rayed for cracks. These requests clearly trigger the Director's § 669(a)(6) duty to inspect, and also satisfy the requirement of administrative probable cause. There remains, however, a question as to the scope of the inspection to be authorized.

### III

The application here seeks a warrant to conduct a § 657(a) physical inspection of five particular workplaces and the areas immediately adjacent to those five workplaces. Such a physical inspection is authorized by the clear language of § 657(a), and has been justified by a showing of administrative probable cause. However, the application also seeks permission, pursuant again to § 657(a), to conduct medical examinations and private interviews of employees in the areas listed above. The interviewing aspect of this proposed procedure is clearly authorized by § 657(a), but § 657(a) does not provide for the medical examination of individuals in a workplace. Similarly, nothing in § 657(a) authorizes the examination of medical and job history records, as also sought by the application here.

Section 657(a) authorizes the Director to enter a target workplace and "to inspect and investigate . . . any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, and materials therein, and to question privately any . . . employer, owner, operator, agent or employee." The most natural reading of subsection (a) would limit it

to authorizing (1) the physical inspection of actual work environments, including machines and materials therein, and (2) the private questioning of persons working in, supervising, or otherwise responsible for such work environments. Medical examinations, documents, and records are simply not mentioned. NIOSH regulations, however, do provide for such medical examinations, 42 C.F.R. §§ 85.4(a), 85.7(c), 85.8, and also authorize NIOSH employees to "review records required by the Act and regulations, and other related records," 42 C.F.R. § 85.-5(a).[2]

### A

■ Although § 657(a) does not on its face authorize medical examinations of employees in areas being inspected, the Court considers this procedure, authorized and subject to important limitations under the regulations, to be within a reasonable construction of § 657(a). While a medical examination can be considerably more intrusive than an interview from an employee's standpoint, the regulations specifically require employee consent before an examination may be undertaken. 42 C.F.R. § 85.-7(c). NIOSH is to conduct and bear the cost of any such examinations. 42 C.F.R. § 85.8. Moreover, all investigation activities must be conducted so as to "preclude unreasonable disruption of the operations of the employer's establishment." 42 C.F.R. § 85.7(e). Thus, from the employer's standpoint, the sort of medical examinations sought here would be only slightly more disruptive than the private interviews with employees clearly authorized in § 657(a).

In addition, the Director's mandate under § 669(a)(6) is to "determine . . . whether any substance normally found in [a] place of employment has potentially toxic effects in such concentrations as used or found." In cases where the toxicity of materials is not well known, determination of toxicity will almost necessarily require an assessment of the health of those persons actually exposed.

---

**2.** Part 85 of 42 C.F.R. governs inspections made as part of a health hazard evaluation undertaken pursuant to § 669(a)(6). 42 C.F.R. § 85.1. Part 85a grants similar powers to NIOSH for other investigations under § 669. 42 C.F.R. § 85a.1.

For the above reasons the Court considers the type of medical examinations sought here to be authorized by § 657(a) via § 669(a)(6) and § 669(b), and it will permit such medical examinations conducted in accordance with applicable regulations. The issue of a § 657(a) "inspection" of medical and employment records, however, is not so easily resolved within the natural scope of § 657(a) and § 669(a)(6).

**B**

■ In the Act, the examination of documents and records in connection with inspections and investigations is dealt with in § 657(b). Under that subsection, "[i]n making his inspections and investigations . . [the Director] may require the attendance and testimony of witnesses and the production of evidence under oath." This provision establishes an administrative subpoena procedure, complete with compulsory process through federal courts, for the production of documentary evidence. When § 657(a) and § 657(b) are read in tandem, there appears to be a distinct and intentional separation of physical inspection and interviewing powers from the power to compel production of documents.

The legislative history of the Act also supports an interpretation of § 657 that limits § 657(a) inspections to interviewing and physical observation and measurement while allowing inspection of records and other documentary evidence via administrative subpoena. As originally introduced, earlier versions of the Act in the 91st Congress all contained the same basic inspection authority as provided in § 657(a), i. e., without mention of documents or their production.[3] These bills either contained a sep-

arate provision permitting some sort of administrative subpoena,[4] or did not provide for production of documents at all in the context of inspections and investigations.[5]

The Senate bill as reported out of committee, designated S. 2193, contained in § 8(b) a provision giving the Secretary (and, indirectly, the Director) "the investigation and subpoena power relating to books, records, documents and witnesses contained in sections 9 and 10 of the Federal Trade Commission Act." S.Rep. No. 1282, 91st Cong., 2d Sess., p. 31 (Oct. 6, 1970), U.S. Code Cong. & Admin.News 1970, p. 5177. Because § 8(a) of S. 2193 contained physical inspection authority like that in 29 U.S.C. § 657(a), not mentioning documents, the committee explained: "*In addition* to the inspection authority, Section 8(b) grants the Secretary of Labor a subpoena power over books, records and witnesses—a power which is customary and necessary for the proper administration and enforcement of a statute of this nature." *Ibid.*, at 5189 (emphasis added). This is a clear indication that access to documents was not granted under the basic inspection authority of § 8(a). Rather, § 8(b) was included to provide a subpoena power as the exclusive means of examining such documents. On November 17, 1970 § 8(a) and § 8(b) of S. 2193 were passed by the Senate as reported out of committee. Committee Print, *supra*, at 528, 546–47.

As reported out of committee, the House bill, designated H.R. 16785, also contained separate provisions for non-documentary physical inspection (§ 9(a)) as opposed to the subpoena of documents (§ 9(b), which was identical to § 8(b) of S. 2193). Similar-

---

**3.** *See* § 5(a) of S. 2193; § 6(a) of S. 2788; § 9(a) of S. 4404; § 5(a) of H.R. 843; § 5(a) of H.R. 3809; § 5(a) of H.R. 4294; § 6(a) of H.R. 13373; § 9(a) of H.R. 16785; § 9(a) of H.R. 19200; *all reprinted in* Subcomm. on Labor, Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970 (Comm. Print 1971) (hereinafter "Committee Print").

**4.** *See* § 6(a)(1) of S. 2193; § 7(a)(2) of S. 2788; § 9(d) of S. 4404; § 7(a)(2) of H.R. 13373;

§ 9(b) of H.R. 16785; § 9(d) of H.R. 19200; *all reprinted in* Committee Print, *supra*.

**5.** H.R. 843·(subpoena power supplied only under "Administrative Enforcement" provisions, and then only in context of violation proceedings); H.R. 3809 (subpoena power supplied only in context of hearings on violation of substantive regulations); H.R. 4294 (no subpoena provision at all); *all reprinted in* Committee Print, *supra*.

ly, the subpoena power of § 9(b) was "in addition" to the inspection authority of § 9(a). H.R.Rep. No. 1291, 91st Cong., 2d Sess., p. 22 (Nov. 9, 1970).

On November 24, 1970 H.R. 16785 was amended on the House floor to replace the Federal Trade Commission authority of § 9(b) with the less sweeping language of the Steiger-Sikes substitute, which also relocated this revised subpoena power to § 9(d). Committee Print, *supra*, at 1098, 1114. H.R. 16785, as amended, was passed the same day. *Ibid.* at 1117. The House immediately considered the Senate bill, S. 2193, but passed it only after amending it so as to insert the text of H.R. 16785. *Ibid.* at 1118, 1138. Eventually the Senate receded to the House on its version of subpoena authority. Conference Rep. No. 1765, 91st Cong., 2d Sess., p. 36 (Dec. 16, 1970).

In sum, at no point in the legislative history of the Act was there any indication that the final version of 29 U.S.C. § 657(a) was intended to authorize access to records and other documents.

There are other factors besides legislative history that militate against a construction of § 657(a) authorizing the examination of documents and records under that section. First, given § 657(b), an expansive reading of § 657(a) to cover documents is unnecessary. *See, e. g., E. I. du Pont de Nemours & Co. v. Finklea*, 442 F.Supp. 821 (S.D.W. Va.1977) (§ 657(b) subpoena procedure used to obtain medical records for use in § 669(a)(6) health hazard evaluation). Second, the examination of medical and personnel records is unlike any other type of physical inspection or private interviewing clearly authorized by § 657(a). To add such documentary discovery to § 657(a) would significantly expand the scope of the type of investigation authorized by that section.[6]

Finally, the basic difference between a warrant and a subpoena leads to the conclusion that where Congress, with respect to the production of documents, has given employers and other persons the superior procedural protection that the subpoena process affords, in contrast to the warrant procedure, courts should not lightly strip such protection away in the name of administrative convenience. When an employer is suddenly presented with an inspection warrant calling for immediate access to his medical and personnel files, he must make a choice: allow the inspection or face charges of civil contempt of court. *See Pelton Casteel, Inc. v. Marshall*, 588 F.2d 1182, 1185 (7th Cir. 1978); *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1123, 1124 (7th Cir. 1978); *Marshall v. Pool Offshore Co.*, 467 F.Supp. 978, 981 (W.D.La.1979). In contrast, if an employer doubts the propriety of an administrative subpoena, or seeks a reduction in its scope, he can move to quash or modify it without exposing himself to the potential penalty implicit in charges of contempt.[7] A court can then review the subpoena in an adversary context where the person subpoenaed and the individuals named in the records can be represented. This procedure differs considerably from the *ex parte* warrant application process.

To the extent that the Act purposely provides for "surprise" inspections, courts have upheld the *ex parte* warrant application process. *See generally In the Matter of Worksite Inspection of S. D. Warren, Division of Scott Paper*, 481 F.Supp. 491 (D.Me.1979) (cases cited on page 494). These courts have reflected the concern that only "sanitized" conditions would obtain in a workplace on the day of an inspection already known to the employer because of an adversary hearing on the warrant. *See also* Committee Print at 434 (remarks

---

**6.** In the two particulars just mentioned examination of records differs radically from the medical examinations that the Court will permit.

**7.** As a practical matter, courts will probably not penalize an employer refusing to honor a warrant because of good faith objections to its validity. Civil contempt proceedings would give the person subpoenaed his day in court, and in many cases where a warrant is upheld the contempt will be purged by allowing the inspection. *But see In the Matter of Establishment Inspection of Gilbert and Bennett Mfg. Co.*, 589 F.2d 1335, 1337 n. 2 (7th Cir. 1979).

of Senator Williams, November 16, 1970). However, this concern cannot reasonably be applied to medical and personnel records on the presumption that employers will falsify or destroy their own business records while challenging a subpoena.

For the several reasons discussed, but primarily because the Act clearly calls for a subpoena procedure when the Director needs to examine documents in making his inspections and investigations under § 657, this Court declines to issue a warrant based on § 657(a) that authorizes inspection of medical or personnel records. The Court will read 42 C.F.R. § 85.5(a) narrowly to require a § 657(b) administrative subpoena procedure to facilitate such an inspection.[8]

In contrast to the Court's position here, there are some cases that could be read to support the view that a § 657(a) inspection may include nonconsensual review of medical and personnel records.

In *Barlow's*, the Supreme Court briefly discussed the review of documents pursuant to § 657(a) and certain Labor Department regulations that are quite similar in pertinent part to the NIOSH regulations involved here. 426 U.S. at 324 n. 22, 98 S.Ct. at 1826 n. 22. In this dictum the Court noted that § 657(a) did not expressly provide for examination of records, while applicable regulations broadly permitted such examinations. *Ibid.* The point made, however, was that no inspection of documents of the scope contemplated by the regulations could be effected without a warrant. *Ibid.* Indeed, the *Barlow's* holding was explicitly based on this Fourth Amendment analysis. 436 U.S. at 324–25, 98 S.Ct. at 1826. The Court was not faced with and did not undertake a close interpretation of what could or could not be inspected pursuant to § 657(a). Therefore, this Court will not read into footnote 22 of the *Barlow's* opinion an implied statement, much less an implied holding, that § 657(a), through appropriate regulations, can authorize exami-

nation of records as long as a warrant is obtained first.

In the context of Labor Department investigations the Seventh Circuit has upheld § 657(a) inspection warrants that permitted, among other things, inspection of records, files and papers relating to the safety of a certain workplace. *Marshall v. Chromalloy American Corp.*, 589 F.2d 1335, 1343 (7th Cir. 1979); *Pelton Casteel, Inc. v. Marshall,* 588 F.2d 1182, 1184 (7th Cir. 1978). In approving the warrant in *Chromalloy*, however, the Circuit Court appeared to be primarily concerned with the *physical* scope of the proposed inspection, noting that "[b]ecause the exact location of violations cannot be known prior to entering the establishment, a narrow, restricted warrant would severely defeat the purposes of the Act."[9] 589 F.2d at 1343. The Court did not specifically address the issue of what *types* of items could be examined pursuant to § 657(a). Similarly, this issue was not dealt with in *Pelton*, which turned on other considerations. 588 F.2d at 1186, 1188.

In another case the Seventh Circuit also intimated that § 657(a) authorizes inspection of documents. *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1125 (7th Cir. 1978). However, the Court did not face this question, but remanded to the District Court for reconsideration of the overriding Fourth Amendment issue in light of *Barlow's. Ibid.*

Thus this Court finds no authority which mandates a result contrary to that reached here. The cases cited by NIOSH with respect to this issue are inapposite because they concern subpoenas rather than warrants, or the pertinent issue was never really decided.

## IV

### *Warrant*

To: SHAWN D. McQUILKIN AND ANY OTHER AUTHORIZED REPRE-

---

8. Because § 85.5(a) explicitly draws its authority from § 657 as a whole, the Court can impose this narrow reading on the regulation without striking any part of it as going beyond the authorization of the statute.

9. It is noteworthy that to bar examination of records pursuant to § 657(a) will not "defeat the purposes of the Act." Review of records can be effected through the § 657(b) subpoena process.

SENTATIVE OF THE NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH, UNITED STATES DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

Request having been made, reasonable legislative and administrative standards having been prescribed, and adequate justification having been shown by Shawn D. McQuilkin, authorized representative of the National Institute for Occupational Safety and Health, United States Department of Health, Education, and Welfare, for an inspection and investigation of the workplace described as:

Inland Steel Company
Indiana Harbor Works
    the mailing address of which is
3210 Watling Street
East Chicago, Indiana

It is HEREBY ORDERED that based on the grounds set forth and under Section 8(a) of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 657(a)), YOU ARE AUTHORIZED to enter the above described premises during regular working hours, for the purpose of conducting an inspection and investigation, known as a health hazard evaluation, to determine whether any substances normally found in any of five specified areas of the premises have potentially toxic effects in such concentrations as used or found. The entry will be only to those areas of the premises relevant to the conduct of the study, which are:

(1) the number 2 coke plant benzol-phenol building,

(2) the number 2 coke plant laboratory,

(3) the by-products area,

(4) the quality control center (water and waste laboratory),

(5) the 76 inch hot strip, plant 2, and

(6) areas immediately adjacent to the above five areas.

Representative breathing zone and general area air samples, bulk material samples and surface wipe samples may be taken in each of the first five above-described areas. For any employee employed in any of the first six above-described areas, medical examina-tions and private interviews may be conducted.

The inspection and investigation shall be conducted in accordance with the regulations set forth at 42 C.F.R. Part 85.