**In the Matter of Establishment Inspection of SKIL CORPORATION.**

**No. 86 M 263.**

United States District Court, N.D. Illinois, E.D.

Aug. 19, 1987.

659

Jan Feldman, Phelan, Pope and John Ltd., Chicago, Ill., Robert Sussman, John

Applegate, Covington and Burling, Washington, D.C., for Skil Corp.

Linda Wawzenski, U.S. Atty's Office, Civil Div., Chicago, Ill.

Don O. Burley, Office of Consumer Litigation, U.S. Dept. of Justice, Washington, D.C., for Office of Consumer Litigation.

John P. Mackay, Acting General Counsel, Consumer Product Safety Com'n, Bethesda, Md., for Consumer Product Safety Com'n.

## MEMORANDUM, ORDER AND CERTIFICATION OF FACTS UNDER 28 U.S.C. § 636(e)

BERNARD WEISBERG, United States Magistrate.

On November 14, 1986, upon application of the Consumer Product Safety Commission (the Commission), this court issued an inspection warrant authorizing representatives of the the Commission to enter the premises of Skil Corporation (Skil) at 4801 West Peterson Avenue and 5033 North Elston Avenue, each in Chicago, Illinois, and inspect and copy certain books, records and papers relevant to determining whether Skil has acted in compliance with the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* (the CPSA or the Act). When officers of the Commission served the warrant on November 17, 1986 Skil refused to permit the inspection authorized by the warrant. Skil has moved to quash the warrant. The Commission has moved for a rule to show cause why Skil should not be held in civil contempt.

*Jurisdiction*

While litigation regarding the validity of previously issued administrative inspection warrants has typically been brought before a District Judge, e.g., *Blocksom & Co. v. Marshall,* 582 F.2d 1122 (7th Cir.1978), a Magistrate has authority to entertain the pending motions under 28 U.S.C. §§ 636(b)(3), 636(e) and Northern District General Rules 1.70 a., 1.70 b.1.(m), 2.40 a

and 1.70 b 4.[1] See also *In re Worksite Inspection of Quality Products, Inc.*, 592 F.2d 611 (1st Cir.1979) holding that a Magistrate who had issued an Occupational Safety & Health (OSHA) warrant had no authority to pass on a request to reconsider that warrant once it was executed, but stating in dictum that "[d]oubtless the Magistrate could have quashed or withdrawn the warrant, for a proper reason, before it was executed." *Id.* at 613. There is no administrative proceeding pending against Skil before the Commission. Therefore, there is no question relating to exhaustion of administrative remedies. Cf. *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir.1979).

*Factual Background*

Skil manufactures power-driven circular saws for sale to consumers. The warrant issued on November 14, 1986 authorizes Commission representatives to inspect and copy records relating to incidents involving Skil's circular saws in which the lower blade guard may have failed or otherwise not properly shielded the blade, including consumer complaints, correspondence, memoranda, test reports, reports of investigations and claims (including insurance claims and product liability lawsuit files); and various engineering records for circular saws with a lower blade guard, including assembly and design drawings, test procedures, test records, test reports and engineering analysis and safety analysis memoranda. In the application for inspection warrant, Robert B. Johnson, an investigator in the midwestern regional office of the Commission in Chicago, said the following things. On June 11 and 16, 1986 he conducted an inspection of Skil as a follow-up to two incidents involving persons injured by Skil circular saws in which the injured persons alleged that the safety guard on the saw had failed to return and cover the blade. During that inspection at Skil's premises at 4801 West Peterson Avenue and its engineering facility at 5033 North Elston Avenue Skil furnished certain information and records relating to Skil's circular saws, including information on design, testing and quality control procedures and claim evaluation practices, an engineering study and an assembly drawing of one of the saw models involved in the two incidents mentioned above. During that inspection he took photographs illustrating the functioning of the same lower blade guard and lower guard return spring that Skil currently uses in its circular saws and that Skil used in the models involved in the two incidents already mentioned. Subsequent to the inspection in June the Commission continued its inquiry. The Commission's staff has investigation reports and reports from attorneys and consumers of sixteen other incidents involving circular saws manufactured by Skil alleging injury from contact with the exposed blade. Two of the injuries resulted in death. The two model numbers involved in the incidents which prompted the June inspection are identified in four of the sixteen additional reports. When Mr. Johnson returned to the Skil offices at 5033 North Elston Avenue in Chicago on September 3, 1986 for a follow-up inspection Skil refused access to any records relating to incidents involving circular saws and to files containing engineering information. As to records involving circular saw incidents, Skil offered to provide summaries of only those incident files that Skil determined contained an allegation that the guard spring was implicated. Skil stated that there were approximately 300 files relating to laceration incidents involving circular saws and that they filled about 30 to 40 filing cabinets. As to engineering information, Skil provided the blueprint and an engineering change notice relating to the spring and lower blade guard on one model of circular saw and subsequently provided tests on springs, but the Commission has received no reports of tests on blade guards or any quality control procedures. Mr. Johnson believes that it is necessary for the Commission to have access to Skil's files containing information relating to incidents involving circular saws

---

**1.** I was the duty magistrate in October 1986 when the Application for Inspection Warrant was first presented.

in which the blade guard may have failed or otherwise did not properly cover or shield the blade and engineering information relating to the design, manufacture and performance of lower blade guards on Skil's circular saws to assist the Commission to determine whether to take any administrative, regulatory or legal action under the CPSA.

The issues raised by the pending motions are these:

(1) Does the Commission have statutory authority to inspect the books and records identified in the warrant?

(2) Has the Commission made a sufficient showing of probable cause to support issuance of the warrant?

(3) Is the warrant overbroad, insufficiently specific or unduly burdensome?

*Statutory Authorization*

■ First, a brief outline of the statute. The stated purposes of the CPSA are to protect the public against unreasonable risks of injury associated with consumer products, assist consumers in evaluating the comparative safety of consumer products, develop uniform safety standards for consumer products and promote research and investigation into the causes and prevention of product-related deaths, illnesses and injuries (§ 2). The CPSA creates the Commission as an independent regulatory commission (§ 4). The Commission is authorized to collect and disseminate information relating to injuries associated with consumer products and conduct research (§ 5), promulgate consumer product safety standards (§§ 7 and 9), promulgate rules declaring that consumer products found to present an unreasonable risk of injury are banned hazardous products (§ 8), file actions in a United States District Court for seizure of imminently hazardous consumer products (§ 12) and require notice and description to the Commission of new consumer products before their distribution in commerce (§ 13).

Section 15(b) requires every manufacturer to immediately report to the Commission information which reasonably supports the conclusion that its product fails to comply with an applicable consumer product safety rule or contains a defect which could create a substantial product hazard. If the Commission determines after a hearing that a product distributed in commerce presents a substantial product hazard, the Commission may require the manufacturer to give public notice (§ 15(c)) and may order the manufacturer to take corrective action, including product repairs, replacement and purchase price refunds. § 15(d). The Act provides for civil and criminal penalties (§§ 20, 21), injunctive enforcement and seizure (§ 22), and private enforcement, including suits for damages by injured persons. §§ 23, 24. Additional functions of the Commission include the power under § 27(b)(3) to require by subpoena the attendance and testimony of witnesses and the production of documentary evidence relating to the execution of its duties.

Section 16 of the CPSA deals with inspection and record keeping. Section 16(a) authorizes the Commission to enter and inspect any factory, warehouse or establishment in which consumer products are manufactured or held or any conveyance used to transport consumer products in connection with distribution in commerce.

Section 16(b) says,

Every person who is a manufacturer, private labeler, or distributor of a consumer product shall establish and maintain such records, make such reports, and provide such information as the Commission may, by rule, reasonably require for the purposes of implementing this chapter, or to determine compliance with rules or orders prescribed under this chapter. Upon request of an officer or employee duly designated by the Commission, every such manufacturer, private labeler, or distributor shall permit the inspection of appropriate books, records, and papers relevant to determining whether such manufacturer, private labeler, or distributor has acted or is acting in compliance with this chapter and rules under this chapter.

The Commission grounds its authority to inspect the books, records and papers described in the warrant in this case on the

second sentence of § 16(b). Skil's position is that the inspection authority in the second sentence of § 16(b) is limited to records which a manufacturer of consumer products is required to maintain by Commission rule pursuant to the first sentence of § 16(b) and since the Commission has not issued a rule requiring Skil to maintain the records described in the warrant, the warrant is without authority under the CPSA.[2] The parties support their respective interpretations of § 16(b) with arguments based on the statutory language, legislative history and cases decided under OSHA. The only question is, what did Congress intend? There is no challenge to Congress' power to authorize the inspection of documents in accordance with § 16(b), whichever interpretation is correct.

Skil's argument on the text of the statute is threefold. Skil says,

(1) "Every such manufacturer" in the second sentence is limited to manufacturers who are subject to record keeping requirements under the first sentence. Skil is not such a manufacturer since it is not subject to any record keeping requirement under existing Commission rules.

(2) "Appropriate" books, records and papers subject to inspection under the second sentence are limited to records required to be kept under the first sentence because "appropriate" is not separately defined, no other antecedent reference is available and unless "appropriate" refers to records required to be kept it is meaningless or surplusage (because it is redundant with "relevant").

(3) Congress' placement of the Commission's record inspection powers as part of § 16(b) rather than with the "all purpose" authority provided in § 16(a) indicates that the record keeping and inspection powers are interrelated and the inspection power is limited to records required to be kept under the first sentence of § 16(b).

The purpose of an inspection of documents under the second sentence of § 16(b) is to aid the Commission in determining whether a manufacturer of consumer products has acted and is acting in compliance with the CPSA and pertinent rules. The inspection power extends to all books, records and papers of such a manufacturer which are appropriate and relevant to such determination. The class of manufacturers whose documents are subject to inspection is defined as "every such manufacturer", which refers to "Every person who is a manufacturer ... of a consumer product" in the first sentence. This is the natural reading of the text. It does not limit "every such manufacturer" to firms subject to existing rules requiring the keeping of records. The Seventh Circuit reached the same conclusion in construing similar provisions in the Clean Air Act. *Ced's, Inc. v. United States E.P.A.*, 745 F.2d 1092, 1098–99 (7th Cir.1984). Under Skil's reading, the power to inspect documents would not apply to anyone unless and until the Commission adopted record keeping rules under the first sentence and then would be limited to the particular records required to be kept. Skil has not pointed to anything in the statute which supports such an interpretation. As to the kinds of records described in the Skil warrant, Skil's reading would require a useless act, the adoption of rules requiring manufacturers to keep records such as product liability claim files and engineering records which they would maintain in any event in the ordinary course of business. A similar argument was rejected in *Ced's, Inc. v. United States E.P.A.* The court said,

In order to have access to and copy any records kept in the ordinary course of business, the EPA would first have to direct the business to maintain them. The function served by a direction to maintain records that are already kept in the ordinary course of business is obscure. We will not interpret a statute to require a meaningless act as a condition of authority if a more plausible interpretation is available.

745 F.2d at 1100.

Section 16(b) provides that all books, records and papers are subject to inspec-

---

**2.** Although the statute refers to manufacturers, private labelers and distributors, for convenience this memorandum will refer only to manufacturers.

tion with two distinct limitations. First, they must be relevant. But, as every lawyer knows, not all relevant documents are subject to compulsory disclosure. Section 16(b) says they must also be "appropriate", i.e., not protected from disclosure for some other reason, such as attorney client privilege or as work product. Given this reasonable interpretation, "appropriate" is meaningful and not redundant. It is not necessary to adopt the procrustean interpretation urged by Skil in which "appropriate" obscurely incorporates the first sentence as a limitation on the second sentence.

Section 16(b) is a logical place for the document inspection authority since that section deals with documents while § 16(a) deals with the inspection of things, consumer products and places where they are manufactured, held and transported. Thus, the placement of the document inspection authority in § 16(b) rather than § 16(a) does not imply any limitation on that authority.

Two other features of § 16(b) militate against Skil's interpretation. The two sentences of the Section are not congruent in scope. Under the first sentence the Commission *may require a manufacturer to keep records* for purposes of implementing the Act *or to determine compliance with the Act*, while the purpose of inspections under the second sentence is limited to determining compliance with the Act. Further, "books, records and papers" in the second sentence refers to existing documents, *as opposed to documents required to be* "established and maintained" under the first sentence. These differences are inconsistent with the argument that the inspection authority should be limited to records required to be kept under the first

sentence because the two sentences are "interrelated" or have the same subject.[3]

Skil argues that the absence of broad inspection authority under § 16(b) is confirmed by the grant of a broad subpoena power in § 27(b)(3) of the CPSA, 15 U.S.C. § 2076(b)(3). Section 27(b)(3) authorizes the Commission to "require by subpena the attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties." Skil relies on *Matter of Kulp Foundry, Inc.*, 691 F.2d 1125 (3rd Cir.1982) and *Matter of Inland Steel Co.*, 492 F.Supp. 1310 (N.D.Ind.1980), each holding that the Secretary of Labor has no authority to inspect documents under § 8(a) of the Occupational Safety and Health Act, 29 U.S.C. § 657(a). *Kulp* and *Inland Steel* each noted the procedural safeguards provided to an employer by the administrative subpoena process compared to the greater intrusiveness of document inspection pursuant to a warrant. In *Donovan v. Fall River Foundry Co.*, 712 F.2d 1103 (7th Cir.1983) the court noted *Kulp* and *Inland Steel* and, without reaching the question, stated, "[w]hile we neither endorse nor reject the reasoning of the Third Circuit at the present time, *Kulp* is important because it represents a recent manifestation of the ongoing concern demonstrated by courts that the Act [OSHA] not lead to unwarranted intrusions into an employer's records." *Id.* at 1110.

OSHA and CPSA differ markedly in their provisions on the subject of inspection authority. Section 8 of OSHA deals comprehensively with inspections, investigations and record keeping but nowhere expressly authorizes the inspection of documents. Section 8(a) authorizes the Secretary to en-

---

**3.** Skil also relies on a similar provision in the Radiation Control for Health and Safety Act, 42 U.S.C. ´§ 263i(b) referred to in the Senate Report. Sen.Rep. No. 749 92d Cong., 2d Sess. 37 (1972). In the case of the Radiation Control Act, Skil says it is even clearer that "appropriate" refers to required records because (1) it is part of the same sentence as the record keeping authorization and (2) Food & Drug Administration regulations interpret this provision to permit inspection only of required records. 21 C.F.R. § 1002.31(b) (1986). However, there is an important difference between the two stat-

utes. The required records and record inspection powers in § 263i(b) each have the same purpose, to determine whether the manufacturer is acting in compliance with the statute. In contrast, as we have seen, the two sentences of § 16(b) are not congruent in scope. Section 16(b) did not simply copy § 263i(b) but provided for the keeping of records required by regulation and records inspection authority in separate sentences. Moreover, the Commission has not issued a regulation limiting its document inspection authority to required records.

ter and inspect places of employment, structures and machines apparatus, devices, equipment and materials therein. Section 8(b) begins, "In making his inspections and investigations under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath." Section 8(c), not dealt with in *Kulp* or *Inland Steel,* requires employers to make and keep records required by regulation. *Kulp* read §§ 8(a) and (b) together as a comprehensive inspection scheme and the subpoena power in § 8(b) as adjunct to the Secretary's power to investigate under § 8(a). Thus, *Kulp* concluded, to read § 8(a) as incorporating the power to obtain documents would render the adjunct subpoena power in § (b) superfluous. 691 F.2d at 1132.

Unlike OSHA, the CPSA in § 16(b) expressly authorizes the inspection of documents. In addition, the administrative subpoena power in § 27(b)(3) does not read as an adjunct to the power to inspect under § 16. The subpoena power broadly authorizes compelling from any person testimony and documents relating to the execution of the Commission's duties. Those duties extend beyond compliance inspections and investigations. They include, among other things, the collection and dissemination of information, research and the promulgation of consumer product safety standards. In contrast, § 16(b) is limited to the inspection of manufacturers' records for the purpose of determining compliance with the Act. Because of the difference in scope between the two provisions, an interpretation which gives full effect to the power to inspect documents in § 16(b) does not render the subpoena power superfluous. In view of these major differences between the two statutes, *Kulp* and *Inland Steel* are not persuasive authority on the scope of the document inspection authority under Section 16(b) of the CPSA.

As compared to inspection upon request, the use of subpoenas to obtain documents does afford certain protections and advantages for the firm involved. However, the fact is that in the CPSA Congress gave the Commission subpoena powers as well as inspection powers and the existence of the subpoena power does not justify importing an unstated limitation on the inspection power in § 16(b).

Turning to the legislative history, Skil finds support for its position in the following statement of the House Committee on § 16(b):

> Records required to be established and maintained by the Commission must be made available for inspection upon request of a duly designated officer or employee of the Commission.

H.R.Rep. No. 1153, 92 Cong., 2d Sess. 44 (1972).[4]

The statement quoted provides, at best, weak support for Skil's position. It does not directly address the scope of the Commission's inspection authority under the second sentence. It does not say that required records and no others are subject to inspection. It says only that required records may be inspected. Even that statement is wrong because some required records are not subject to inspection.[5]

The Conference Committee adopted Section 16(b) as approved by the House and rejected § 314 of the Senate Bill which also dealt with inspection and record keeping. Section 314(b) of the Senate Bill provided in the first sentence for the keeping of records and reports as required by Commission regulations. The second sentence of § 314(b) provided,

> Upon request of an officer or employee duly designated by the Commissioner every such person shall permit the inspection of such records and other books, records, and papers relevant to determining whether such person is in compliance

---

**4.** The same House Committee Report referred to the Commission's inspection powers as "broad". *Id.* at 21.

**5.** See text at note 3 supra as to the different scope of the two sentences of § 16(b). A manufacturer could, for example, be required to keep records to assist the Commission's research activities. Those records may have nothing to do with a manufacturer's compliance with the Act and, if so, would *not* be subject to inspection under the second sentence of § 16(b).

with this Act and regulations, standards, and orders prescribed thereunder.

Sen.Rep. No. 749, 92d Cong., 2d Sess. 67 (1972).

As to the question at issue here, the court fails to see any material difference between the two provisions or any significance in Congress' choice of the House provision. Under the Senate provision the inspection power was not limited to records required under the first sentence ("such records") but also extended to "other books, records and papers". The House provision includes the "appropriate" limitation but, as we have seen, that does not refer to records required under the first sentence. The Conference Committee Report discussed other differences between the inspection and record keeping provisions of the two bills but said nothing about the provision in question. H.R.Conf. Rep. No. 1593, 92d Cong. 2d Sess. 54 (1972).[6]

In the end, the legislative history is, at most, inconclusive but the statute is clear. Again, the reasoning of *Ced's*, although analyzing a different statute, is applicable:

> If Congress had intended the records referred to in subsection (2)(B) to be confined to records required to be maintained under section 114(a)(1), it could easily have done so by appending to "any records" the phrase "required to be maintained under paragraph (1)," as it had done in the immediately preceding subsection, or by simply putting "such" in place of "any."

745 F.2d at 1100.

*Probable Cause*

*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), decided under OSHA, held that probable cause for an administrative search may be based either on specific evidence of an existing violation or a general administrative enforcement plan. *Id.* at 320–21, 98 S.Ct. at 1824–25. The Commission maintains that the warrant application in this case meets the requirements of *Marshall v. Barlow's* and Seventh Circuit precedent for probable cause based on specific evidence of an existing violation.

The Commission says that it is seeking information pursuant to § 16(b) of the CPSA relevant to determining whether any of Skil's circular saws present a substantial product hazard requiring remedial action under the Act. Section 15(a) defines "substantial product hazard" as,

> (2) a product defect which (because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk, or otherwise) creates a substantial risk of injury to the public.

Sections 15(c) and 15(d) of the Act provide that if the Commission determines after a hearing that a product presents a substantial product hazard, the Commission may order remedial action by the manufacturer, including giving public notice of the hazard, repair or replacement of the product or purchase price refunds. The Commission says the information is also sought because it is relevant to determining whether Skil has complied with § 15(b) of the CPSA which provides,

> Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product—
>
> (1) fails to comply with an applicable consumer product safety rule; or

---

**6.** Skil notes that in the House debates Rep. Dennis expressed concern about the Commission's power to "require the keeping of whatever records practically that it may desire, and [to] require admission of the Commission's agents to inspect those records ..." 118 Cong.Rec. 31382 (September 20, 1972). Skil says if the Commission was to have broad authority to inspect all of a business' records under Section 16(b), Rep. Dennis would have mentioned and objected to such a provision and that he therefore clearly assumed that the Commission could inspect only records which the Commission required to be maintained. Even granting the inference which Skil draws from Rep. Dennis' remarks, his views as a critic who voted against the bill are entitled to little weight. See *Id.* at 31417. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203–04 n. 24, 96 S.Ct. 1375, 1386 n. 24, 47 L.Ed.2d 668 (1976).

(2) contains a defect which could create a substantial product hazard described in subsection (a)(2) of this section,

shall immediately inform the Commission of such failure to comply or of such defect, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect or failure to comply.

15 U.S.C. § 2064(b).

The Commission says that while it has reached no conclusion as to whether Skil has violated its reporting obligation under § 15(b) or whether Skil's saws involve a substantial product hazard, it has made sufficient showing to justify an inspection of Skil's records to obtain information needed to make such a determination.

Skil contends that the Commission's application fails to show probable cause for issuance of the inspection warrant. Skil's argument may be summarized as follows: The warrant application contains no evidence that Skil's saws contain a product defect or present a "substantial product hazard," as defined in the CPSA. The application relies on conclusory reports of injuries. No details or supporting documentation are provided for any of the incidents, nor is there any explanation of why the alleged injuries reflect a defect in the saw instead of careless handling or other factors unrelated to the design of the saws themselves. Circular saws are powerful tools with sharp blades and accidents in their use are inevitable. General, undocumented allegations of injuries are not enough to show the existence of a product defect, a principle recognized in OSHA cases which have rejected claims of safety violations supported solely by evidence of injuries.[7] The generalized allegations of injured persons and their lawyers are no more inherently credible than the newspa-

per reports of an injury which were held insufficient to show probable cause in *Federal Clearing Die*, 655 F.2d at 797. The Commission made no effort to identify particular aspects of design or manufacture of Skil's circular saws that may be defective nor has it pointed to recurring accident scenarios that might give rise to concrete concerns about some feature of circular saw performance and use. Thus the Magistrate was "given no clue as to what the nature of the alleged violation might be," quoting *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373, 378 (7th Cir.1979). Skil argues that for these reasons the application fails to show probable cause of the existence of a product defect, something which Skil says the Commission must show under both of the relevant provisions of § 15.

■ Probable cause requirements which govern criminal cases do not apply to administrative inspections, whether based on a general inspection plan or on specific evidence of an existing violation. *Burkart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1316–19 (7th Cir.1980). Where the application is based on an employee complaint, it is not necessary that the complaint be provided to the Magistrate, that the complainant be identified, that the application set forth the underlying circumstances demonstrating the basis for the complainant's conclusion or that it show the complainant to be a credible person. *Id.* at 1319–20. However, a conclusory statement that employee complaints have been received, without more, is insufficient. The application must state the substance of the complaints "so that the Magistrate may exercise independent judgment as to whether an inspection is justified, rather than acting as a mere rubber stamp validating the decision already reached by the Secretary." *Id.* at 1319. An application which states that complaints have been

---

7. *Donovan v. Federal Clearing Die Casting Co.*, 655 F.2d 793, 797 (7th Cir.1981); *National Realty & Construction Co. v. Occupational Safety And Health Review Commission*, 489 F.2d 1257, 1267 (D.C.Cir.1973). Skil also cites § 402A of the Restatement (Second) of Torts, Comment i (the fact that a product caused an injury is not of itself proof that the product is defective) and

the caution contained in the National Electronic Injury Surveillance System (NEISS) published by the Consumer Products Safety Commission that the data reported are based on injuries that the injured persons say are related to products, and it is therefore incorrect when using such data to "say the injuries were caused by the product."

received from employees which describe specific unsafe and unhealthful conditions and that OSHA had determined that reasonable grounds existed to believe that violations would be found on the premises to be inspected is sufficient to state probable cause. *Id.* at 1319–21; *Matter of Establishment Inspection of Gilbert & Bennett Manufacturing Co.*, 589 F.2d 1335, 1339 (7th Cir.1979); *Rockford Drop Forge Co. v. Donovan*, 672 F.2d 626, 631 (7th Cir.1982).

■ Applying these principles here, the administrative probable cause standard does not require the Commission to present sufficient information to enable the Magistrate to determine whether the consumer product has a defect or presents a substantial product hazard. Rather, the application must provide enough information to enable the Magistrate to decide whether the agency's decision to conduct an inspection to aid its investigation of those questions was itself a reasonable decision. Such a showing provides "specific evidence of an existing violation". *Burkart Randall*, 625 F.2d at 1320.

■ The Commission's application in this case suffices to show probable cause. Paragraph 17 states that the original inspection of Skil in June 1986 was a follow up to two incidents involving circular saws manufactured by Skil which involved injuries in the use of two Skil circular saws, each identified by model number. In both incidents the injured person alleged that the safety guard on the saw had failed to return and cover the blade. Thus the application does not, as Skil contends, simply report injuries involving Skil saws. It identifies a specific possible defect, malfunctioning of the lower blade guard assembly, as the basis for the Commission's determination that the inspection sought is necessary to enable the Commission to carry out its responsibilities under the Act. The application states the substance of the underlying complaints and enabled the Magistrate to exercise independent judgment as to whether the inspection is justified. The application here is as specific in this regard as the descriptions of unsafe working conditions which were held sufficient in *Burkart Randall*, *Gilbert & Bennett* and *Rockford Drop Forge*. While the facts in the application are not sufficient to establish the existence of a defect or substantial product hazard, they do constitute a reasonable basis for the Commission's conclusion that further investigation is justified.

Although the facts in ¶ 17 are sufficient to show probable cause, that conclusion is buttressed by ¶ 24 which describes investigation reports and reports from attorneys and consumers of sixteen additional injury incidents involving Skil circular saws. The description of those incidents does not specifically refer to the lower blade guard mechanism. But it may be inferred that the lower blade guard mechanism was implicated in those incidents since the functioning of that mechanism was the focus of the two incidents which prompted the initial inspection in June and was clearly identified as the subject on which the Commission had sought additional information since June. See Application, ¶¶ 18–24.[8]

■ Whether the showing of probable cause is based on two cases or eighteen cases, Skil says that is not enough, that "an isolated defect" is not enough to create the requisite "pattern of defect". Skil Memorandum In Opposition To The Motion For A Rule To Show Cause, p. 6.[9] But Skil failed to read all of § 15(a)(2) which defines a "substantial product hazard" to include a product defect which creates a substantial risk of injury "because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk or otherwise." Since a pattern of defect is only one of several ways to establish a substantial product hazard, it cannot be required for a showing of probable cause to investigate such a hazard. Given the severe risks presented by a power saw,

---

8. No weight is attached to the statement in ¶ 27 of the Application that Skil has approximately 300 files relating to laceration incidents involving circular saws since no further facts are given about those incidents.

9. Skil does not say what would suffice to establish such a pattern.

there is no basis for requiring that a pattern of defect always be shown. To require the Commission to document a pattern of injuries relating to a suspected defect in every warrant application would arguably require an even stronger showing than criminal probable cause.

■ Skil's attack on the absence of details or supporting documentation and on the "generalized allegations of injured persons and their lawyers" represents another effort to apply criminal probable cause standards to applications under the CPSA. Criminal probable cause does not apply. There is no need to set forth the circumstances of the underlying complaints, to provide the complaints themselves, to identify the complainants or to corroborate their credibility or the accuracy of their complaints. *Burkart Randall*, 625 F.2d at 1320, *Gilbert & Bennett*, 589 F.2d at 1339.

■ It has been suggested that the primary purpose of the administrative warrant requirement is to provide "some guarantee against arbitrariness." *LeFave, Search and Seizure*, § 10.2(d), p. 643 (1986). There is no suggestion here that the Commission has acted arbitrarily or that it seeks inspection for harrassment or any other improper reason. "Reasonableness is still the ultimate standard." *Marshall v. Barlow's, Inc.*, 436 U.S. at 315, 98 S.Ct. at 1822. Warrants for the inspection of commercial premises are issued under a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved. *See v. City of Seattle*, 387 U.S. 541, 544–45, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). The focus of judicial inquiry is on whether the enforcement agency had reasonable ground for the conclusion that an inspection was necessary. In determining whether there is probable cause the need for inspection must be weighed against the invasion which the search entails. *Camara v. Municipal Court*, 387 U.S. 523, 535–37, 87 S.Ct. 1727, 1734–35. "If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Id.* at 539, 87 S.Ct. at 1736. Section 16(b) reflects Congress' determination that the power to inspect the manufacturer's documents is essential to enable the Commission to conduct an effective investigation of compliance with the CPSA. Effective enforcement of the CPSA would be seriously hampered if the Commission were required to adduce detailed evidence documenting the basis for its determination that a substantial product hazard may exist before it could obtain a warrant to carry out an inspection under § 16(b). If Skil's view of probable cause were accepted, the Commission would be barred from vital information in the manufacturer's engineering and claim files until it conducted its own engineering studies and collected accident and injury data showing a pattern of defect. This court finds nothing in the probable cause requirement as formulated by the Supreme Court and the Seventh Circuit which justifies erecting such a significant obstacle to effective enforcement of the Act.

Skil has challenged only the showing of probable cause of the existence of a product defect. It has not raised, and the court therefore does not address, whether § 16(b) authorizes the Commission to conduct an inspection to determine whether to seek remedial action under § 15(c) or 15(d), whether probable cause for an inspection to determine compliance with § 15(b) requires anything more than evidence of a possible product defect and, if so, whether the application here sufficiently sets forth such additional showing.

*Is The Warrant Overbroad, Insufficiently Specific or Unduly Burdensome?*

■ Skil complains that the warrant is overbroad, does not sufficiently specify the records to be inspected and imposes unnecessary and burdensome requirements for an index of all documents for which Skil asserts a claim of attorney client or work product privilege.

The warrant authorizes inspection and copying of the following documents:

Records relating to incidents involving Skil's circular saws in which the lower blade guard may have or is alleged to

have failed or otherwise not properly shielded the blade, including but not limited to: (1) consumer complaints; (2) correspondence; (3) memoranda; (4) test reports; (5) reports of investigations; (6) claims (including insurance claims and product liability lawsuit files); and

Engineering records for circular saws with a lower blade guard, including but not limited to assembly and design drawings, test procedures, test records, test reports, and engineering analysis and safety analysis memoranda, relating to: (1) design, manufacture, assembly, and functioning of the lower blade guard; (2) pre-production and production testing of the lower blade guard; (3) quality control testing of the performance and functioning of the lower blade guard; (4) testing and analysis of circular saws that have lower blade guards and which retailers or consumers have returned to Skil; (5) engineering change orders relating to the performance and functioning of the lower blade guard, and reasons for each change order; and (6) safety of the lower blade guard. Such engineering records shall include but not be limited to the results of testing and analysis of results of testing performed in accordance with the following test procedures: "Underwriters Laboratory Standard 45, paragraph 27.5"; "Test Procedure for Evaluation of Lower Guard Return Springs, Standard Number CL–121"; "Test Standards for Saws, Routers and Planers, Standard No. G–109"; "Skil Corporation Engineering Laboratory Circular Saw— Use and Handling Evaluation"; "Lower Guard Return Spring Test" described in Memorandum dated February 12, 1981, to Peter G. Rebechini from Peter Domney and Frank Consoli.

In *Barlow's* the Supreme Court said: "Delineating the scope of a search with some care is particularly important where documents are involved." 436 U.S. at 324 n. 22, 98 S.Ct. at 1826 n. 22. The inspection here is sought to determine whether Skil's circular saws have a product defect, present a substantial product hazard and whether Skil has failed to report information as required by § 15(b) of the Act. The

warrant application identifies the lower blade guard mechanism of Skil's circular saws as the possible defect which may present a substantial product hazard. The warrant is limited to records relating to incidents involving Skil's circular saws in which the lower blade guard may have or is alleged to have failed or otherwise not properly shielded the blade as well as engineering records for circular saws with a lower blade guard.

Skil argues that since the types of engineering records to be inspected are described as "including but not limited to" the specific types of engineering records listed, all other types of engineering records could be inspected as well. But Skil does not say what other types of engineering records it has for circular saws with a lower blade guard or, if there are such records, why they should not be subject to inspection.

Skil complains that since all of Skil's circular saws have lower blade guards, Application ¶ 19, and since circular saws comprise a major portion of Skil's business the warrant permits a time consuming and highly disruptive search of the great bulk of Skil's voluminous engineering records. Affidavit of A.S. Dimcoff, Assistant Vice President for Consumer Affairs and Product Safety, of Skil's parent, Emerson Electric Co., attached to Skil's Memorandum In Support of Its Emergency Motion to Quash Search Warrant, ¶¶ 3, 5–6. Since circular saws account for a major part of Skil's business, it is inevitable that the records subject to inspection are extensive. However, since the inspection is limited to records relating to saws with a lower blade guard, Skil has not shown any basis for limiting or declining to enforce the warrant in this regard.

As to product liability and claim files, the Dimcoff Affidavit states that Skil has approximately 500 individual files concerning circular saw incidents which fill nearly 20 file cabinets and most claims involving laceration injuries include an allegation that the lower blade guard failed to function properly. *Id.* ¶ 8–9. Skil argues that since the warrant authorizes the inspection of

files relating to incidents in which the lower blade guard "may have or is alleged to have failed" it will permit the Commission to inspect documents which "only arguably contain evidence that the guard may have failed." Skil says it will be required to search every file for every claim or lawsuit allegedly involving a circular saw with a lower blade guard. Skil also argues that "may have failed" is vague and subjective.

Skil has not indicated that any records are involved other than claim files, most of which according to ¶ 9 of the Dimcoff Affidavit include an allegation that the lower blade guard failed to function properly. Accepting Skil's contention that compliance with the warrant will involve a significant burden, Skil has nevertheless failed to show that the inspection authorized by the warrant goes beyond the records which are reasonably necessary to enable the Commission to carry out its responsibilities under the Act. The warrant is however modified by deleting the words "may have or" at Page 2, line 7. This part of the warrant will thus be limited to claim files relating to incidents in which a failure of the lower blade guard mechanism is alleged.

■ Finally, Skil attacks the provisions of the warrant which require Skil to prepare an index of all documents for which it asserts attorney client or work product privilege claims.[10] Skil says that this requirement imposes an extreme burden of having a lawyer on call during the inspection so that each file chosen for review by the inspectors can be immediately reviewed for protected documents, an inefficient and costly procedure which would encourage hasty decisions. Skil also complains that an index of documents for which privilege is claimed is unnecessary and the ten day deadline for its preparation unreasonably brief.

Paragraph 10 of the Dimcoff Affidavit states that a large number of legally privileged or work product documents are intermingled in the claim files. Therefore extensive privilege claims may be expected. Skil, in effect, asks that it be permitted to withhold documents as privileged without informing the Commission that documents are being withheld or providing customary identifying information needed if privilege claims are to be subject to challenge. That request is rejected. Upon further consideration, the pertinent portion of the warrant is modified to require that an index of documents for which attorney client or work product privilege is claimed must be prepared and delivered by Skil only with respect to specific files designated by the Commission for inspection. As to each such file designated, if Skil wishes to assert such claims, it may withdraw the documents for which it claims privilege at the time of inspection and must deliver an index of such documents within fourteen days after designation of the file involved.

*Certification Under 28 U.S.C. § 636(e)*

The Commission asserts that Skil's refusal to honor the inspection warrant constitutes a contempt of the District Court under 28 U.S.C. § 636(e)(1).[11] The Commission requests that this court certify the fact of Skil's refusal to honor the warrant

---

10. The warrant provision in question states,

    Skil shall immediately provide access to the documents specified above, except for those documents for which Skil asserts a claim of either the attorney-client privilege or the work-product rule. Within ten calendar days of receipt of this warrant Skil shall prepare and shall furnish to the Commission an index of all documents for which it asserts such claims. Such index shall state: the particular basis for asserting the privilege or rule; the date indicated on the document; the name, position or title, and organization of the author; the name, position or title, and organization of the intended recipient or addressee; a description of the documents with sufficient specificity to permit a determination of the validity of the assertion of the privilege or rule; and, if the document is related to a specific incident, the name of the individual(s) involved and the date of the incident.

11. Section 636(e) provides in pertinent part,

    In a proceeding before a Magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the Magistrate is sitting:
    (1) Disobedience or resistance to any lawful order, process, or writ; ... Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or caused to be served upon any person whose behavior is brought into question under the section an order requiring such person to appear before a judge of that court upon a

to a district judge and serve Skil with an order requiring it to appear before that judge to show cause why Skil should not be held in civil contempt. Skil argues that issuance of a rule to show cause would be premature and that it should be allowed the opportunity to honor the warrant and the issue of contempt certified to the district court only if Skil's conduct warrants a contempt citation, citing *In The Matter of Outboard Marine Corp.*, 85 MO30, slip op. at 4–5 (N.D.Ill, March 20, 1985) (Magistrate Lefkow). The court in *Outboard Marine* did not rule that Outboard Marine was entitled to a further opportunity to obey the warrant after its motion to quash was denied. Rather, the court ruled that Outboard Marine had a duty to obey the warrant until it obtained an order quashing it, but because the agency agreed in open court to stay execution of the warrant pending disposition of the motion to quash the Magistrate decided not to certify the facts unless there was further disobedience to the warrant. In this proceeding the parties filed a stipulation on December 3, 1986 which provides that the Commission will not attempt to conduct the inspection described in the warrant until 48 hours following a ruling by the Magistrate granting the Commission's motion for a rule to show cause and denying Skil's motion to quash.

The Commission says that it seeks an order of civil contempt in order to obtain compliance with the inspection warrant and the purpose of the contempt citation it seeks is remedial rather than punitive. Since Skil will have fifteen days before it is required to appear before a district judge to show cause why it should not be held in contempt, it will have ample opportunity, if it chooses, to comply with the inspection warrant and moot the coercive aspect of the Commission's motion.

*Conclusion*

For the reasons stated.

(1) The warrant is modified by deleting the words "may have or" at page 2, line 7.

date certain to show cause why he should not be adjudged in contempt by reason of the

(2) The second sentence in the paragraph beginning on line 8 of page 4 of the warrant is deleted and the following is substituted:

As to each specific file designated by the Commission for inspection, Skil may, promptly after such designation, withdraw documents for which it claims either the attorney client privilege or the work product rule and Skil must deliver within 14 days after such designation an index of all documents for which it asserts such claims.

(3) Skil's motion to quash is hereby denied, and

(4) The government's motion for rule to show cause is granted.

This court hereby certifies to the district judge acting as emergency judge on September 3, 1987, the fact of Skil's refusal to honor the warrant for inspection issued by this court dated November 15, 1986. See Northern District General Rule 2.43 a. Skil is hereby ordered to appear before the district judge acting as emergency judge on September 3, 1987 at 10:00 a.m. to show cause why it should not be judged in civil contempt by reason of the facts certified hereby.